Robinson, J.
 

 The defendant filed in this court a
 
 *158
 
 motion to dismiss this canse for the reason, as it claims, that there is in fact and law no conflict between the judgment rendered by the Court of Appeals of Cuyahoga county herein and the judgment rendered by the Court of Appeals of Lake county in the case of
 
 Lautermilch
 
 v.
 
 Painesville Utopia Theater Co.,
 
 and argues that, notwithstanding the fact that the Court of Appeals of Cuyahoga county found such conflict to exist, this court nevertheless has jurisdiction to review such finding, and that if it finds itself not in accord with the finding of the Court of Appeals on the question of conflict that then it is without jurisdiction to hear the cause.
 

 Section 6 of Article IV of the Constitution of Ohio provides:
 

 “Whenever the judges of a Court of Appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other Court of Appeals of the state, the judges shall certify the record of the case to the Supreme Court for review and final determination.”
 

 The Constitution thus imposes in the judges of a Court of Appeals jurisdiction to determine when a judgment on which they have agreed is in conflict with a judgment pronounced upon the same question by any other Court of Appeals of the state, and requires them, when they have so determined, to thereupon certify the record to this court for review and final determination. The same section of the Constitution, in another portion thereof, refers to the jurisdiction of this court to direct any Court of Appeals to certify its record in cases of public or. great general interest, and in Section
 
 2
 
 of Article IV the jurisdiction is directly conferred upon this
 
 *159
 
 court, in cases of public or great general interest, to direct any Court of Appeals to certify its record to this court for review, affirmance, modification, or reversal; but in neither section by any specific provision is there conferred upon this court jurisdiction to review or redetermine the fact, once determined by the Court of Appeals, of the existence or nonexistence of a conflict between the judgments of different Courts of Appeals upon the same questión.
 

 A fair interpretation of the provision giving to Courts of Appeals jurisdiction to determine when a conflict exists between its judgment upon a given question and the judgment of another Court of Appeals upon the same question is that the Constitution in such case imposes in such Court of Appeals final jurisdiction to require this court to assume jurisdiction to review and finally determine a cause so certified. If it does not do that, the provision empowering a Court of Appeals to make such finding and certification is ineffective for every purpose. This court has the power, by reason of the provisions of Section 2 of Article IV, in the exercise of a sound discretion, to require the certification of any ease of public or great general interest. It must be conceded that any legal question, upon the determination of which two Courts of Appeals disagree, is a question of public and great general interest. If, then, this court may review the finding of the Court of Appeals that a conflict exists, and upon such review reverse such finding and deny jurisdiction to review the case, the certification of conflict by the Court of Appeals amounts to nothing more than a recommendation that this court assume jurisdiction.
 

 
 *160
 
 This court will not assume that any- provision of the Constitution was adopted without a purpose, but will assume the contrary and attempt to give to each provision such force as will accomplish its ascertainable purpose. We have been of the impression that the interpretation by this, court of that provision of the Constitution was so clearly set forth in the case of
 
 State ex rel. Sylvania Home Telephone Co.
 
 v.
 
 Richards,
 
 94 Ohio St., 287, 114 N. E., 263, that it is no longer debatable; but that there may 'be no further question we now announce that the Constitution (Section 6, Article IV) confers upon the Court of Appeals jurisdiction to require this court to review' and determine any legal question involved in its determination of a case properly before it which it has found as a fact to be in conflict with the judgment of another Court of Appeals determining the same legal question in a case properly before it, and that the question of whether or not such conflict exists is not open to review by this court for the purpose of determining this court’s jurisdiction; that the finding of conflict by the Court of Appeals conclusively establishes the jurisdiction of this court.
 

 The motion to dismiss is overruled. •
 

 At the trial of this cause, plaintiff introduced in evidence sections 1461 and 1489 of an ordinance of the city of Cleveland. Those sections read:
 

 “Sec. 1461.
 
 Existing Elevators to be Equipped.
 
 —Any person or persons, company, or corporation having charge of any building in which any elevator is or may be in use shall equip such elevator with the devices or appliances required in subdivision C, and keep the same in good working order and re
 
 *161
 
 pair; and it shall be unlawful for any person or persons, company, or corporation to erect, use, or operate, or cause or permit to be erected, used, or operated, in any building within the city of Cleveland, any freight or passenger elevator unless the same be equipped with the devices and appliances as provided in the aforesaid subdivision.”
 

 Subdivision C: “Sec. 1489.
 
 Boors.
 
 — All doors approaching elevator shafts shall have safety locks of approved make, so that said doors will be closed when the elevator car is not at the floor where said doors are located.”
 

 The plaintiff also introduced certain other sections of the same ordinance, which were admitted in evidence and afterwards withdrawn from the consideration of the jury in the general charge. The correctness or otherwise of such withdrawal is not here considered.
 

 The defendant, however, introduced section 1493 of the same ordinance, which reads:
 

 “Protection of Well
 
 Holes,
 
 Elevator Shafts and Open Courts in Existing Buildings.
 
 — -Owners of all buildings erected prior to the passage of this division, containing elevators, hatches or well holes, elevator shafts or open courts, shall, upon written notice from the commissioner of buildings so to do, properly and sufficiently guard and protect such elevator hatches, well holes or elevators, with gates or guards so as to avoid danger to human life, and said gates or guards shall be closed on all floors except when’cars are in actual use.”
 

 The building in question was built prior to the adoption of the ordinance, and no notice from the commissioner was ever given.
 

 
 *162
 
 It is claimed that because this section refers specifically to buildings erected prior to the passage of the ordinance it is effective to exempt persons having charge of such buildings from the duty to conform with the requirements of the ordinance except upon written notice from the commissioner of buildings.
 

 The same rules of construction apply to the construction of a municipal ordinance that apply to the construction of an act of the General Assembly; that is, if possible, an ordinance should be construed so as to give effect to each of its provisions, and specific provisions will obtain over general provisions. We do not have the benefit of a copy of the entire ordinance, nor did the court below. We assume, however, that the diligence of counsel has brought into the record so much thereof as is pertinent to the question under consideration.
 

 Section 1461 is entitled “Existing Elevators to be Equipped.” Section 1493 is entitled “Protection of Well Holes, Elevator Shafts and Open Oourts in Existing Buildings.” Section 1461 deals with persons, companies, and corporations having charge of any building in which any elevator
 
 is
 
 or may be in use. Section 1493 deals with owners of buildings erected prior to the passage of the ordinance. Section 1461 then is distinguishable from Section 1493 by the fact that it deals with both existing and future elevators, while Section 1493 deals only with existing elevators. Section 1493 is therefore more limited in its application, and to that extent may be said to be more specific. But it will be observed that Section 1493 does not except owners of buildings and elevatqrs erected prior to the pas
 
 *163
 
 sage of the ordinance from the requirements of Section 1461, but simply defines what their duty shall be, upon notice, which duty is similar to the duty defined in Section 1461, which contains no provision for notice. It is neither an exception nor a proviso to Section 1461 or any other section of the ordinance. It provides for the attachment of duty upon the happening of an event, which duty had theretofore been imposed by Section 1461 without qualifications. To make it effective as excepting existing buildings and elevators from the operation of the general provisions of the ordinance it is necessary for the court to read into it an exception which does not in fact there appear. We know of no rule of construction which would permit such liberality, especially where its effect would be to make an ordinance enacted as a safety measure — and, but for such construction, of general application — apply unequally to persons similarly situated and to property similarly used.
 

 We are of opinion that the trial court committed no error in the admission of Sections 1461 and 1489 of the ordinance. We are of opinion that the evidence of the plaintiff tended to prove not only a violation by the defendant of those sections of the ordinance, but also a violation of the provisions of subsection 4 of Section 1027, General Code, and that the judgment of the Court of Appeals cannot be sustained upon the theory that there was no evidence tending to prove actionable negligence on the part of' the defendant.
 

 These conclusions require consideration of the more troublesome question of the inference of negligence, arising out of the evidence of the plaintiff proximately contributing to his injury.
 

 
 *164
 
 While the fact that the plaintiff was npon the premises of the defendant npon invitation imposed upon the defendant the duty to have his premises in a reasonably safe condition, and to warn plaintiff of. latent or concealed perils of which defendant knew, and entitled plaintiff to rely upon the performance of that duty by the defendant, yet that relationship did not entitle him to act in* a wholly heedless manner, in total disregard of his own safety. He had a right to assume, and act upon the assumption, that the premises were in a reasonably safe condition, that the provisions of the ordinance and the state law with reference to elevators, elevator shafts, and elevator doors had been complied with, and that he would be warned of latent and hidden perils of which the defendant knew, but he was not thereby absolved from the duty of exercising for his own safety ordinary care and of employing the senses with which nature had provided him.
 

 He testified that he did not see any warning sign upon the door. Another witness testified that there was no sign upon the door. For the .purposes of this review, since final judgment was rendered for the defendant in the Court of Appeals, we must assume that there was no sign upon the door. He testified that the door was a metal covered sliding door; that it was closed; that he walked up to it, and opened it, and back of it he found total darkness; that, in the absence of an emergency or an occasion for haste, without thought or hesitation, without investigation, information, or knowledge of what was concealed by the darkness, he stepped into that darkness and was precipitated to the bottom of the shaft, to his injury. Quoting his language:
 

 
 *165
 
 “Opened this door and made one step and fell down the elevator shaft.” '
 

 Quoting again: •
 

 ‘ ‘ Q. When you opened the door, did you see ahead of you? A. I didn’t see anything; it was dark.
 

 “Q. Pitch dark, was it? A.. Yes, sir.
 

 “Q. Do I understand that you took hold of this door with your right hand? A. Yes, sir.
 

 “Q. Walked up to it, pulled it open? A. Yes.
 

 “Q. And stepped through? A. Yes, sir.
 

 “Q. Without seeing what was ahead of you? A. Yes, sir.”'
 

 Remembering that this accident occurred about the noon hour, that this plaintiff entered the elevator shaft from a room sufficiently lighted, either by natural or artificial means, or both, to enable the operation of printing presses therein, and'in which at the time, within a few feet of the door to the elevator, several employees of the defendant were then engagéd in eating their noon lunch, whom he must have known were competent to give him dependable information and direction as to the means of egress from the room, his testimony that after opening the door he took “one step” into total darkness, without investigation by sense of touch, procuring of a light, inquiry from the defendant’s employees close at hand, or in any other manner, raises an inference of the absence of that degree of care on his part that an ordinarily prudent man would have exercised under the there existing circumstances— an inference of negligence on his part proximately contributing to his injury. ,
 

 He did not fall because of the unlocked door, but because of the “one step” he took into the dark
 
 *166
 
 ness. Manifestly, the darkness made it futile for him to further pursue the steam pipe line through that opening and was a natural warning to him to either exercise his sense of touch or refrain from further progress until he had, by the procuring of a light, dispelled the darkness, or by inquiry, or in some other manner, acquired information of what lay beyond. It is not claimed by the plaintiff that be was precipitated into the shaft by the process of opening the door, which should have been locked, but that he was precipitated by a “step” into the darkness. True, the accident would not have happened had the defendant been free from negligence; but it is equally true, that, had the plaintiff exercised that care that an ordinarily prudent man would have exercised under the there existing circumstances, the accident would not have happened.
 

 The inference of negligence on the part of the plaintiff thus raised was in no way offset in his case in chief nor throughout the trial. The motion for a directed verdict at the close of the plaintiff’s case should have been sustained. The rule which denies compensation because of contributory negligence on the part of the injured party in cases such as this may be a harsh one. It is a common-law rule, subject to modification by legislation, but not by judicial interpretation. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Day, Allen, Kinkade, Jones and-Matthias, JJ., concur.