Mario Gabel, plaintiff-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, General Division, Case No. CV-321223, in which the trial court granted the summary judgment motion of Apcoa, Inc., defendant-appellee, on plaintiff-appellant's negligence cause of action. Plaintiff-appellant assigns two errors for this court's review.
Plaintiff-appellant's appeal is not well taken.
On March 20, 1996, plaintiff-appellant, his fiance, his brother Jim, Jim's wife and Mr. and Mrs. Ralph Martz attended a Garth Brooks concert at the Gund Arena in downtown Cleveland, Ohio. Prior to leaving for the concert, the group met at Jim Gabel's home in Lorain County where plaintiff-appellant admittedly consumed two beers and smoked an unspecified amount of marijuana. The group then left the house and proceeded to downtown Cleveland in Ralph Martz's van.
Being unfamiliar with the Cleveland area, the group followed concert traffic to the Parkwell Garage located near Gund Arena between Prospect Avenue and Huron Road. Parkwell Garage, which is owned and operated by defendant-appellee, is a nine level garage with a basement level, a rooftop level and seven levels in between marked one through seven. Vehicles enter the garage through level one and exit the garage from the basement level, both of which are located on Prospect Avenue. In addition, the garage has two pedestrian doors. One door is located in the southwest corner of the garage and opens onto Huron Road. The second door is located in the northeast corner of the garage next to a glass vestibule and the vehicle entrance on Prospect Avenue. The pedestrian doors are open twenty-four hours a day. The vehicle entrance is generally open until 10:00 p.m., but may close early when the garage has reached its capacity. The vehicle exit ramp is open until 11:00 p.m. Monday through Friday and until 8:00 p.m. on Saturday or until two hours after a special event at Jacobs Field or Gund Arena.
Next to the garage entrance on the outside perimeter of the building is a fifteen to twenty foot deep ventilation well. The ventilation well is designed to provide natural ventilation to the garage and is located between the garage itself and a paved parking area adjacent to the entrance ramp of the garage. The ventilation well, which is not owned by or a part of the Parkwell Garage, is separated from the garage on level one by a four foot, eight inch high chain link fence that is constructed upon an approximately two foot high concrete wall. The distance between the floor of level one and the top of the chain link fence is approximately six feet, eight inches high. The fence is designed to prevent accidental access to the ventilation well from the garage area.
After attempting to park inside the garage, Mr. Martz, who was driving the van, determined that the van would not fit through the garage entrance. At this point, the parking attendant directed Mr. Martz to park the van on the paved area next to the parking garage entrance ramp. Mr. Martz paid the five dollar parking fee and parked the van in the paved area as directed. Allegedly, Mr. Martz asked the attendant on duty if he would be able to return to his van through the garage after the concert. The attendant replied that the parking garage doors would be open for two hours after the event. The group then proceeded to Gund Arena by cutting through the garage's vehicle entrance, across level one and out the southwest pedestrian door onto Huron Road.
Plaintiff-appellant recalls consuming approximately five beers during the concert.[1] The group left Gund Arena as Garth Brooks was performing his last encore at approximately 10:50 p.m. and proceeded back to the parking garage to get the van. The group retraced their steps through the garage back to the parking area where the van was located. The group experienced some difficulty walking through the garage as the lights on that level were not working and the garage was "pitch black." The garage had experienced similar problems in the past with its lighting system.
Upon arriving at the vehicle entrance where the group had previously entered the garage, they discovered that the door which they had come through was locked. However, Mr. Martz's van was visible through the glass vestibule and northeast pedestrian door. The group was unable to locate a Parkwell Garage employee to assist them in reaching the van as they were unable to access the pedestrian door located on that level as it was separated from the garage by the glass wall.
After it became apparent that the group would be unable to reach the van through the entrance doorway, Mr. Martz saw the chain link fence which separated level one from the ventilation well and the adjacent parking area where the van was parked. At this point Mr. Martz determined to jump over the fence in order to reach the van. Mr. Martz then took a running start, scaled the fence, dropped down onto a ledge avoiding the ventilation well and safely reached the van.
Shortly afterward, plaintiff-appellant, who had observed Mr. Martz scale the fence, decided to join him on the other side. Plaintiff-appellant then jumped onto the fence and climbed to the top. While balancing on top of the fence on his stomach, plaintiff-appellant realized for the first time that he could not see what was on the other side as it was "all black." At this point, plaintiff-appellant's momentum prevented him from climbing back down the fence to safety and he fell forward hoping to land on solid ground. Unfortunately, plaintiff-appellant fell into the ventilation well sustaining serious injuries.
On December 23, 1996, plaintiff-appellant filed his complaint for negligence against defendant-appellee alleging that he was seriously injured due to defendant-appellee's negligence while he was a business invitee in defendant-appellee's public parking garage. Defendant-appellee filed a timely answer and discovery ensued.
Subsequently, August 5, 1997, defendant-appellee filed a motion for summary judgment in which it maintained that: (1) plaintiff-appellant was no longer a business invitee at the time of his injuries but rather, a trespasser, to whom the only duty owed is to refrain from willful or wanton conduct that was likely to cause injury; (2) that the condition at issue; i.e., the ventilation well, was an open and obvious hazard from which plaintiff-appellant should have protected himself; and (3) plaintiff-appellant's own individual negligence far exceeded any alleged negligence on the part of defendant-appellee and constituted the proximate cause of plaintiff-appellant's injuries. On September 5, 1997, plaintiff-appellant filed his brief in opposition to defendant-appellee's summary judgment motion in which he reiterated his position that his injuries were caused by defendant-appellee's negligence. Specifically, plaintiff-appellant argued that the inadequate lighting in the garage, the lack of a safe alternative exit, inadequate staffing of the garage at the time of his injuries and the failure to warn of a hidden danger in the form of the ventilation well all constituted a breach of the duty of care owed by defendant-appellee to plaintiff-appellant thereby proximately causing plaintiff-appellant's injuries to such an extent that, at the very least, judgment as a matter of law was inappropriate.
On June 3, 1998, the trial court granted defendant-appellee's motion for summary judgment. The trial court determined that, even if plaintiff-appellant were a business invitee at the time of the injury rather than a trespasser, the "step-in-the-dark rule" would bar any recovery by plaintiff-appellant. The trial court stated in pertinent part:
 In the case sub judice, plaintiff failed to investigate the area beyond the fence prior to ascending and jumping over it. Also, plaintiff failed to investigate the numerous other ingress/egress options available to him. There is no duty placed upon premises owners to protect invitees from dangers which are so obvious and apparent that they could reasonably be expected to discover and protect themselves against them. (Citations omitted.)
The trial court determined further that plaintiff-appellant's negligence so clearly outweighed any alleged breach of duty by defendant-appellee that reasonable minds could only conclude that plaintiff-appellant's own actions were the proximate cause of his injuries.
On June 29, 1998, plaintiff-appellant filed a timely notice of appeal from the judgment of the trial court.
Plaintiff-appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN APPLYING THE "STEP IN THE DARK RULE" UNDER THE FACTS OF THIS CASE.
Plaintiff-appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE ARE NUMEROUS ISSUES OF MATERIAL FACT UPON WHICH REASONABLE MINDS COULD DISAGREE.
Having a common basis in both law and fact, this court shall consider plaintiff-appellant's first and second assignments of error simultaneously. Plaintiff-appellant argues, through his first assignment of error, that the trial court improperly applied the "step-in-the-dark rule" to the facts of the underlying case. It is plaintiff-appellant's position that the rule is inapplicable when, as in this case, an individual steps from what plaintiff-appellant identifies as "involuntary darkness" toward a well lighted area in an attempt to leave allegedly unsafe premises. Similarly, plaintiff-appellant argues, through his second assignment of error, that numerous issues of material fact exist which preclude judgment as a matter of law. Specifically, plaintiff-appellant argues that the ongoing lighting problem in the garage, inadequate staffing after the concert, insufficient ingress/egress to the garage and the alleged failure to warn of a hidden danger combine to create genuine issues of fact regarding defendant-appellee's negligence. Finally, plaintiff-appellant maintains that there is a question of fact regarding his alleged negligence as the proximate cause of his own injuries.
The standard for granting a motion for summary judgment is set forth in Civ.R. 56(C). In applying this rule, the Ohio Supreme Court has consistently held that, before such a motion can be granted, the moving party must show that: (1) there is no genuine issue of fact; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383;Welco Industries, Inc. v. Applied Cas. (1993), 67 Ohio St.3d 344;Osborne v. Lyles (1992), 63 Ohio St.3d 326.
A motion for summary judgment forces the non-moving party to produce evidence on issues for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, syllabus. The non-movant must also present specific facts and may not merely rely upon the pleadings or upon unsupported allegations. Shaw v. Pollack Co. (1992),82 Ohio St.3d 656. When a party moves for summary judgment supported by evidentiary material of the type and character set forth in Civ.R. 56(C), the opposing party has a duty to submit affidavits or other material permitted by Civ.R. 56(E) to show that there is a genuine issue for trial. Harless v. Willis Day Warehousing Co.
(1978), 54 Ohio St.2d 64.
In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court discussed the standard to be applied when reviewing motions for summary judgment. The court stated:
 Again, we note that there is no requirement in Civ.R. 56 that any party submit affidavits to support a motion for summary judgment. See, e.g., Civ.R. 56(A) and (B). There is a requirement, however, that a moving party, in support of a summary judgment motion, specifically point to something in the record that comports with the evidentiary materials set forth in Civ.R. 56(C).
Id. at 298.
The court's analysis of an appeal from a summary judgment is conducted under a de novo standard of review. See Maust v. BankOne Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Howard v.Willis (1991), 77 Ohio App.3d 133. No deference is given to the decision under review, and this court applies the same test as the trial court. Bank One of Portsmouth v. Weber (Aug. 7, 1991), Scioto App. No. 1920, unreported.
To establish a claim for negligence, a plaintiff must demonstrate the following: (1) the existence of a duty; (2) a breach of this duty; and, (3) injuries proximately resulting from that breach of duty. Strother v. Hutchinson (1981), 67 Ohio St.2d 282,423 N.E.2d 467. Where the claimant is a business invitee of the possessor of the premises at the time of the accident, the owner of the property has a duty to exercise ordinary or reasonable care for the safety and protection of the business invitee which includes having the premises in a reasonably safe condition and warning of latent or concealed defects or perils of which the possessor has or should have knowledge. Patete v. Benko
(1986), 29 Ohio App.3d 325, 327-328, 505 N.E.2d 647.
Where darkness is a factor in an alleged negligence situation on the premises of a business owner, it must be remembered that darkness itself constitutes a sign of danger and the person who disregards a dark condition does so at his or her own peril.Brandimarte v. Packard (May 18, 1995), Cuyahoga App. No. 67872, unreported; Schneider v. Associated Estates Realty (March 4, 1999), Cuyahoga App. No. 73981, unreported. To this end, Ohio courts have adopted a step-in-the dark rule which provides:
 The step-in-the dark rule, as enunciated by Ohio courts, holds generally that one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law. Flury v. Central Publishing House (1928), 118 Ohio St. 154, 160 N.E. 679; McKinley v. Niederst (1928), 118 Ohio St. 334, 160 N.E. 850.
Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271,276, 344 N.E.2d 334, see also, Manofsky v. Goodyear Tire andRubber Co. (1990), 69 Ohio App.3d 663, 666, 591 N.E.2d 752.
In Posin, supra, the Supreme Court stated further:
 Where evidence is conflicting on the issue of contributory negligence or where a combination of circumstances exists requiring a determination as to the credibility of witnesses in order to deduce the true facts relative to the issue of contributory negligence, then no inference of a lack of ordinary care arises and the ultimate resolution of this issue is solely within the province of the jury. Rothfuss v. Hamilton Masonic Temple Co. (1973), 34 Ohio St.2d 176, 297 N.E.2d 105; Chardon Lakes Inn Co. v. MacBride (1937), 56 Ohio App. 40, 10 N.E.2d 9.
 The step-in-the-dark rule merely raises an inference of the lack of prudence and ordinary care on the part of the plaintiff. If conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary, deliberate step into unknown darkness, then clearly an inference of contributory negligence does not arise.
 Evidence of this nature presents a factual question for determination by the jury. Rothfuss, supra, 34 Ohio St.2d 176, 297 N.E.2d 105; Painesville Utopia Theater Co. v. Lautermilch (1928), 118 Ohio St. 167, 160 N.E. 683;. Chardon Lakes Inn Co., supra, 56 Ohio App. 40, 10 N.E.2d 9; Plotkin v. Meeks (1936), 131 Ohio St. 493, 3 N.E.2d 404.
This court is not unmindful that principles of comparative negligence have superseded the doctrine of contributory negligence as an absolute bar to recovery under R.C. 2315.19. However, the advent of comparative negligence analysis does not necessarily preclude an award of summary judgment. Purpera v.Asamoto (June 22, 1995), Cuyahoga App. No. 67917, unreported. InPurpera, this court, citing Mitchell v. Ross (1984), 14 Ohio App.3d 75, which was a post-comparative negligence case, stated:
 Summary judgment may be granted to defendants in a negligence suit where, after construing the undisputed evidence most strongly in favor of plaintiff, a reasonable person could only conclude that the contributory negligence of the plaintiff was greater than the combined negligence of the defendants.
In Sidel v. Humphrey (1968), 13 Ohio St.2d 45, the Ohio Supreme Court stated:
 There is no duty to protect her from dangers which were known to her, or which were so obvious and apparent to her that she could reasonably be expected to discover them and protect herself against them. In sum, an occupier or owner of premises is under no duty to protect an invitee from dangers which are known to such invitee.
In the case sub judice, plaintiff-appellant initially maintains that the step-in-the-dark rule is inapplicable to the present factual situation. It is plaintiff-appellant's position that he did not "intentionally" step into darkness, but rather, was forced to climb the fence separating the first level of the parking garage from the ventilation well due to defendant-appellee's failure to provide an adequate and safe exit from the garage to the van, inadequate lighting on the first level of the garage which prevented plaintiff-appellant from finding an alternate route to safety and inadequate staffing. Plaintiff-appellant argues that, in actuality, he was attempting to extricate himself from a darkened area, the parking garage, and enter an area where the van was parked that was well lighted and safe. Therefore, plaintiff-appellant maintains that the step-in-the-dark rule does not bar recovery in this case.
Contrary to plaintiff-appellant's assertions, the evidence fails to demonstrate that defendant-appellee's conduct forced him, in any way, to scale an approximately six and one-half foot high concrete wall and fence as the only reasonable manner to exit the garage and retrieve the van. Plaintiff-appellant ignores a number of significant facts in reaching his conclusion. Initially, as the trial court properly determined, plaintiff-appellant failed to investigate any number of ingress/egress options available at the time prior to making the unfortunate decision to climb the fence, a fence which was erected to prevent the very type of accident that occurred in this case. More importantly, plaintiff-appellant, who was extremely intoxicated at the time, admittedly failed to attempt to ascertain what, if anything, was directly on the other side of the fence prior to scaling the barrier. It was only after he reached the top of the fence that plaintiff-appellant looked down for the first time and realized that he could not see what was on the other side. At this point, plaintiff-appellant maintained that it was too late to safely climb back down as his momentum was carrying him over the top so he proceeded hoping there would be solid ground underneath him when he landed. (T. 107-108.) There was not and, as a result, plaintiff-appellant landed approximately fifteen feet below in the unobserved ventilation trench. Clearly, plaintiff-appellant's own disregard for his personal safety combined with his admitted disregard of a darkened area on the opposite side of a chain link barrier were the proximate cause of plaintiff-appellant's injuries rather than any alleged negligence on the part of defendant-appellee. SeeSchneider v. Associated Estates Realty, supra.
Plaintiff-appellant contends further that, even assuming he bore partial responsibility for his injuries, the issues of comparative negligence and causation are issues ordinarily determined by the trier of fact. It is plaintiff-appellant's position that any alleged negligence on his part must be weighed against defendant-appellee's alleged negligence by the trier of fact. In Simmers v. Bentley Construction Co. (1992), 64 Ohio St.3d 642,646, the Supreme Court, in dealing with this issue, stated:
 Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion. Hitchens v. Hahn (1985), 17 Ohio St.3d 212, 213-214, 17 OBR 447, 448, 478 N.E.2d 797, 799; Shinaver v. Szymanski (1984), 14 Ohio St.3d 51, 14 OBR 446, 471 N.E.2d 477.
In the case herein, plaintiff-appellant's failure to investigate a safe alternative route back to the van, extreme intoxication at the time of the accident and admitted failure to determine the nature of the conditions on the opposite side of a darkened security fence prior to making the decision to scale the barrier were clearly the proximate cause of plaintiff-appellant's injuries and undoubtedly superceded and outweighed any alleged negligence on the part of defendant-appellee. As the trial court correctly determined, "no reasonable trier of fact could find that any negligence on the part of defendant exceeded that of plaintiff."
For the foregoing reasons, this court finds that plaintiff-appellant was, in fact, negligent and that his own negligence precluded recovery as a matter of law. Thus, the trial court properly granted defendant-appellee's motion for summary judgment on plaintiff-appellant's negligence cause of action.
Plaintiff-appellant's first and second assignments of error are not well taken.
Judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI, P.J., and PATTON, J., CONCUR.
 ____________________ MICHAEL J. CORRIGAN JUDGE
[1] Subsequent blood alcohol tests conducted later that night at 11:58 p.m. by MetroHealth Medical Center revealed a blood alcohol level of .26% as well as a positive test for marijuana.