[Cite as *Gibbs v. Speedway, L.L.C.*, 2014-Ohio-3055.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| GLENN L. GIBBS, et al, | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No.   26026 |
| | : | |
| v. | : | Trial Court Case No.   2013-CV-401 |
| | : | |
| SPEEDWAY LLC | : | |
| | : | (Civil Appeal from |
| Defendant-Appellee | : |  Common Pleas Court) |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 11th day of July, 2014.

. . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. No. 0036843, DANIELLE GROVES, Atty. Reg. No. 0081136, 130 West Second Street, Suite 310, Dayton, Ohio 45402
         Attorney for Plaintiffs-Appellants

BRADLEY A. WRIGHT, Atty. Reg. No. 0047090, 222 South Main Street, Akron, Ohio 44308, BRIAN J. AUGUSTINE, Atty. Reg. No. 0084818, 250 East Fifth Street, Suite 310, Cincinnati, Ohio 45202
         Attorneys for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiffs-Appellants, Glenn and Patricia Gibbs, appeal from a summary judgment decision rendered in favor of Defendant-Appellee, Speedway, LLC ("Speedway"). In support of their appeal, the Gibbses contend that the trial court's decision was incorrect because Mr. Gibbs adequately identified the cause of his fall, and because Speedway was negligent per se.

{¶ 2} We conclude that the trial court did not err in rendering summary judgment in Speedway's favor. There were no genuine issues of material fact, and Speedway was not liable for the fall under theories of negligence or negligence per se. In the first place, Mr. Gibbs could not identify the cause of his fall. Assuming that his fall was due to ice, the snow and ice in the parking lot where he fell were the result of natural accumulation. Further assuming that the lighting was insufficient, the danger was open and obvious, and Speedway had no duty to warn. Finally, Speedway is not liable under a theory of negligence per se, because an applicable municipal ordinance pertaining to lighting of spaces is not a specific rule that establishes a standard of conduct replacing the "reasonable person" standard. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} On January 21, 2011, at about 7:00 a.m., Glenn Gibbs went to Speedway's gas station and convenience store to purchase Kerosene. When Mr. Gibbs arrived, he drove around to the side of the store where the Kerosene pump was located, parked his car, and went inside to pay for the Kerosene. He may also have purchased coffee. It was dark outside, but the part of

the lot where the Kerosene pump was located had a light that was a bit taller than the pump. However, a tanker truck was sitting in front of the pump and blocked the light. Mr. Gibbs observed the issue with the lighting when he went into the store.

{¶ 4} It was a bitterly cold morning, and the parking lot was iced over. There were rolls of ice and there was snow on ice in the parking lot. The snow and ice were not there because a pipe had burst or anything; it was a natural accumulation. According to Mr. Gibbs: "I could feel what I was walking on. I was trying – I was taking my time, because I knew it was that slick and rutted up and down through there. So I was taking little bunny steps, trying to get down through there. And all of a sudden, all I know is I stubbed my left foot on something. And when I did, I went down." Deposition of Glenn Gibbs, pp. 57-58.

{¶ 5} As a result of the fall, Mr. Gibbs sustained injuries to the left side of his neck and to his left knee. He also suffered one broken and one cracked rib. After falling, Mr. Gibbs obtained his Kerosene and went home. When he told his wife what had happened, she went to Speedway and alerted them of the accident. She then took him to the emergency room for treatment.

{¶ 6} In January 2013, Mr. and Mrs. Gibbs filed suit against Speedway. They claimed in the complaint that Mr. Gibbs had stepped into a pothole on Speedway's lot and had sustained injuries. The complaint asserted claims based on negligence and negligence per se, and also included a consortium claim on Mrs. Gibbs' behalf. During the course of discovery, Speedway took Mr. Gibbs' deposition, where the following exchange occurred:

Q. Am I correct that in Paragraph 9 of the Complaint, you've alleged that you stepped into a pothole in the parking lot of the Speedway store and that's what

caused you to fall?

A. I don't know what it was. I don't know what I stepped on or stubbed my toe on. I don't know – I saw the red cap when I went by later, and I thought maybe that was it. But I don't even know if that was it or if it was just – it was so rutted up and iced over and thick with all that in the lot, that I might have just tripped in the ice, you know, in the rut in the ice, or I might have tripped on that cap right there. I'm not sure.

Q. So you just don't know?

A. It was dark. It was pitch dark. I couldn't tell you.

Q. You just don't know why you fell?

A. All I know is I stubbed my left foot on something. And that's when I went down. But I don't know what it was. Because I couldn't see anyway. All I wanted to do after that was get up and go home. I mean, I was laying in a cold parking lot, sweating all over, you know, in pain.

Deposition of Glenn Gibbs, pp. 51-52.

{¶ 7} In September 2013, Speedway filed a motion for summary judgment, contending that there were no genuine issues of material fact and that it was entitled to judgment in its favor. Subsequently, the trial court rendered judgment in favor of Speedway. The Gibbses appeal from the judgment of the trial court.


II. Did the Trial Court Err in Rendering Judgment in Speedway's Favor?

{¶ 8} The Gibbses' sole assignment of error states that:

The Trial Court Erred By Granting Defendant-Appellee Speedway, LLC's Motion for Summary Judgment.

{¶ 9}     Under this assignment of error, the Gibbses make three main claims: (1) that Mr. Gibbs adequately identified the reason for his fall; (2) that the "open and obvious" doctrine does not apply to this case; and (3) that Speedway was negligent per se.   After setting forth some general standards, we will address each issue separately.

## A.   General Standards

{¶ 10}     As was noted, the trial court rendered summary judgment in favor of Speedway.  "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor."  (Citation omitted.)  *Smith v. Five Rivers MetroParks*, 134 Ohio App.3d 754, 760, 732 N.E.2d 422 (2d Dist.1999).   "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court."   (Citations omitted.)   *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16 (2d Dist.).   With these standards in mind, we will consider the Gibbses' claims.

## B.   The Negligence Claim

{¶ 11}     In granting summary judgment for Speedway, the trial court held that Mr. Gibbs could not recover for his injuries because he could not identify the cause of his fall.   "It is

fundamental that in order to establish a cause of action for negligence the plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting therefrom." *Colville v. Meijer Stores Ltd.*, 2d Dist. Miami No. 2011-CA-011, 2012-Ohio-2413, ¶ 23, citing *Menifee v. Ohio Welding Prod., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶ 12} Regarding the existence of a duty, "[i]n Ohio, the status of the person who enters upon the land of another ( *i.e.*, trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." (Citation omitted.) *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). The facts of this case indicate that Mr. Gibbs was a business invitee on Speedway's property. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." (Citations omitted.*) Light v. Ohio University,* 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986).

{¶ 13} In granting summary judgment for Speedway, the trial court relied on *Harshaw v. Trotwood Foodtown, Inc.*, 2d Dist. Montgomery No. 15125, 1996 WL 74702 (Jan. 24, 1996), in which we stated that " '[t]o establish negligence in a slip and fall case, it is incumbent upon the plaintiff to identify or explain the reason for the fall. Where the plaintiff, either personally or by outside witnesses, cannot identify what caused the fall, a finding of negligence on the part of the defendant is precluded.' " *Id.* at \*1, quoting *Stamper v. Middletown Hosp. Assn.*, 65 Ohio App.3d 65, 68-69, 582 N.E.2d 1040 (12th Dist.1989).

{¶ 14} The Gibbses argue that the trial court applied *Harshaw* too expansively and ignored subsequent clarifications in *Johnston v. Miamisburg Animal Hosp., Inc.*, 2d Dist.

Montgomery No. 18863, 2001 WL 991733 (Aug. 31, 2001), and *Pacey v. Penn Garden Apartments*, 2d Dist. Montgomery No. 17370, 1999 WL 76841 (Feb. 19, 1999).

{¶ 15}    In *Pacey*, the plaintiff slipped and fell on a sidewalk.  He initially said that he had fallen on ice, then said that he had fallen on some small concrete pebbles, and finally stated that he was not sure why he had fallen.  *Id.* at *1-2 and 3.  However, a witness testified that there was a small patch of ice in the area where the plaintiff fell.  *Id*. at *3.

{¶ 16}    After the trial court granted summary judgment in favor of the defendant, the plaintiff appealed.  On appeal, the defendant argued that the summary judgment should be affirmed because the plaintiff could not identify the cause of his fall.  *Id.* at *4.  We disagreed. We first noted the law indicating that negligence is precluded where the cause of a fall cannot be identified.  *Id.*    We then stated that:

> However, many victims of slip and fall accidents will not be able to identify what caused them to fall, particularly where they are injured seriously, and require immediate medical attention.  The question in those cases is whether there is any evidence from other witnesses regarding the cause of the fall. If there is, then a finding of negligence is not precluded.
>
> Here, after expressing certainty that his fall was caused by small, concrete pebbles, Pacey finally stated that he did not know what had caused his fall. Nevertheless, [the witness] Weneck testified that there was a patch of ice in the area where Pacey fell.  Thus, looking at the evidence in the light most favorable to Pacey, it can be reasonably inferred from the evidence that Pacey may have slipped and fallen on the patch of ice observed by Weneck. Accordingly, this is

not a case where the cause of the fall cannot be identified.

(Citations omitted.) *Pacey* at *4-5.

**{¶ 17}** *Pacey* is distinguishable from the case before us, because there were no witnesses to Mr. Gibbs' fall. We also note that we ultimately affirmed the grant of summary judgment in *Pacey*, based on the fact that the ice was a natural accumulation, for which the landlord would not be liable. *Id.* at *5-6.

**{¶ 18}** In *Johnston*, the plaintiff alleged that he had fallen on a wet spot on the floor of an animal hospital, but he was unable to identify the nature of the substance on which he had fallen. *Johnston,* 2d Dist. Montgomery No. 18863, 2001 WL 991733 at *1. The trial court granted summary judgment in favor of the defendant, concluding that under *Harshaw*, the plaintiff was required to identify the substance upon which he slipped. *Id*., citing *Harshaw,* 2d Dist. Montgomery No. 15125, 1996 WL 74702.

**{¶ 19}** We disagreed with the trial court's strict interpretation of *Harshaw*, but noted that summary judgment on the defendant's behalf was still warranted. *Id*. at *3. In this regard, we observed that:

> In *Harshaw*, there was evidence that the cashier wiped something from the store's floor shortly after Harshaw had slipped. This court found that evidence had supported an inference that a foreign substance had been on the floor, but absent evidence of what the substance was, Harshaw had not met her burden to prove that the defendant had created the condition or that the defendant knew or had reason to know and had failed to remove it or had a duty to warn her. Specifically, it was Harshaw's inability to identify what caused her fall which

prevented the source of the hazard from being identified.

We do not interpret *Harshaw* to require a plaintiff to specifically name the substance which caused his fall. In this case, Johnston did provide a reasonable inference, through evidence of his and Phillips' [a witness'] depositions, that the substance upon which he had slipped was water. However, while it is logical to infer that the Hospital was responsible for the dampness of the kennel floor in an area that non-employees rarely frequent, a fact different from a situation where a store's hazard could have been caused by a customer, this fact alone is insufficient to give rise to the inference that a hazardous condition was created by the Hospital.

Furthermore, the record fails to indicate that the Hospital had actual knowledge of the existence of water on the cement floor. Nor is there any evidence as to how long the floor had been wet from which a trier of fact could infer that the Hospital had constructive notice of the condition. Johnston did not establish the existence of water on the kennel floor nor did he provide the length of time the water had been on the kennel floor. An inference of negligence does not arise from mere guess, speculation, or wishful thinking, but rather can arise only upon proof of some fact from which such inference can reasonably be drawn. *Parras v. Standard Oil Co.* (1953), 160 Ohio St. 315, 52 O.O. 206, paragraph two of the syllabus. This case is distinguishable from *Combs v. First Natl. Supermarkets, Inc.* [105 Ohio App.3d 27, 663 N.E.2d 669 (8th Dist. 1995)], *supra*, in which a jury question was found to have existed on whether a store

breached a duty of care when it failed to clean a spill that had been on the sales floor for fifteen to twenty minutes. In *Combs*, a disinterested shopper swore that he saw the spill on the floor when he arrived in the store and learned that Combs had fallen in that spill fifteen to twenty minutes later. We found this evidence sufficient to establish a material issue of fact on whether the store had had constructive notice. *Id.* at 30-31. In contrast, Johnston can only engage in conjecture and speculation.

*Johnston,* 2d Dist. Montgomery No. 18863, 2001 WL 991733 at *3-4.

**{¶ 20}** According to Mr. Gibbs, the fact that he felt ruts of ice under his feet gives rise to an inference that he tripped over a rut of ice. He also contends that he identified the reason he fell, i.e., insufficient lighting. He, therefore, argues that under *Johnston* and *Pacey*, it cannot be said that the record is devoid of any evidence of the cause of his fall.

**{¶ 21}** We disagree with Mr. Gibbs. He was unable to state why he fell. This differs from the situation in *Johnston*, where the testimony of the plaintiff and witnesses supported a reasonable inference that the plaintiff fell because of water. However, assuming for the sake of argument that Mr. Gibbs fell on ice, he failed to show that the ice was anything other than a natural accumulation, for which Speedway would not be liable. In fact, Mr. Gibbs acknowledged in his deposition that the accumulation was natural. Furthermore, even if the lighting was poor, Speedway had no duty to warn of an open and obvious danger.

## B. The Open-and-Obvious Doctrine

**{¶ 22}** "An owner or occupier of property has a duty to warn a business invitee of

unreasonably dangerous latent conditions that a business invitee cannot reasonably be expected to discover. A latent danger is 'a danger which is hidden, concealed and not discoverable by ordinary inspection, that is, not appearing on the face of a thing and not discernible by examination.' " *McCoy v. Kroger Co.*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965,¶ 8, quoting *Potts v. Smith Constr. Co.*, 23 Ohio App.2d 144, 148, 261 N.E.2d 176 (1st Dist.1970).

**{¶ 23}** However, under the open-and-obvious doctrine, "a premises-owner owes no duty to persons entering those premises regarding dangers that are open and obvious." (Citation omitted.) *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 80, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. In *Armstrong*, the Supreme Court of Ohio stressed that:

> The rationale underlying this doctrine is "that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. A shopkeeper ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers. When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims.

(Citations omitted.) *Armstrong* at ¶ 5.

**{¶ 24}** Relying on *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161 (2d Dist.), Mr. Gibbs contends that whether darkness or insufficient lighting is an open and obvious danger is generally a jury question. However, this is an inaccurate description

of the holding in *Hissong*. What we said in *Hissong* is that "whether a particular danger is open and obvious depends heavily on the particular facts of the case." *Id.* at ¶ 13. We went on to observe that " '[w]hether a given hazard is open-and-obvious * * * *may* involve a genuine issue of material fact, which a trier of fact must resolve.' " (Emphasis added.) *Id.*, quoting *Henry v. Dollar Gen. Store*, 2d Dist. Greene No. 2002-CA-47, 2003-Ohio-206, ¶ 10. "May" does not mean "generally."

{¶ 25} We noted in *Hissong* that "[t]he question of whether a particular danger is open and obvious is answered objectively, without regard to the injured plaintiff. Accordingly, the open-and-obvious test 'properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.' " *Id.* at ¶ 10, quoting *Armstrong*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 13.

{¶ 26} We further observed that "[w]hat is material to the open-and-obvious test is whether the danger is observable, which means it 'is discoverable or discernible by one who is acting with ordinary care under the circumstances.' " *Id.* at ¶ 11, quoting *Earnsberger v. Griffiths Park Swim Club*, 9th Dist. Summit No. 20882, 2002-Ohio-3739, ¶ 24. (Other citation omitted.)

{¶ 27} In the case before us, Mr. Gibbs indicated that he arrived at Speedway in the early morning, around 7:00 a.m. He stated that he observed the issue with the lighting when he went into the store. Mr. Gibbs went to the Speedway store with some regularity, as it was the store closest to where he lived. Mr. Gibbs also knew where the Kerosene tank was, because he had filled up his tank at this Speedway before. In addition, Mr. Gibbs was aware when he walked out of the store that a tanker truck was blocking the light on that end of the parking lot,

and that it was pretty black in the area where the Kerosene pump was. In fact, he described the area as "pitch black." Deposition of Glenn Gibbs, p. 52.

{¶ 28} Without taking Mr. Gibbs' subjective awareness into account, it is apparent that the area was very dark and that the hazard would have been open and obvious to anyone. As a result, there is no factual issue with respect to whether the danger was open and obvious. In this regard, we note that the situation in *Hissong* was significantly different, as the danger involved steps that descended immediately on the other side of a threshold after a door was opened. The plaintiff had opened the door into an unlighted area, expecting to find a restroom. Instead, she opened a door onto the stairway, and fell down the stairs. *Id*. at ¶ 2. We concluded that the question of whether most people would look down before entering a restroom could not be answered as a matter of law. *Id.* at ¶ 35. We further observed that "[o]ne could think that a door, particularly one that opens inward like the door here, hides the danger." *Id.*

{¶ 29} In contrast, the situation before us does not involve any type of hazard that might reasonably be classified as hidden. The inability to see by virtue of the tanker blocking the light was an open and obvious danger, and Speedway owed no duty to Mr. Gibbs to warn him about it. *Compare Johnson v. Regal Cinemas, Inc.*, 8th Dist. Cuyahoga No. 93775, 2010-Ohio-1761, ¶ 21 (holding that even if a theater were entirely dark, the darkness was an open and obvious hazard, and the theater owner was not liable as a matter of law for a patron's fall); and *McCoy*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965, at ¶ 14 (rejecting any recovery for truck driver who was injured by stepping into a trench in a poorly-lit area of a parking lot. The court noted that the trench was an open and obvious danger, and that "as a matter of law, darkness is always a warning of danger, and may not be disregarded.") Accordingly, Speedway

owed no duty to Mr. Gibbs to warn him of any danger.

{¶ 30} In their reply brief, the Gibbses argue that in some situations an individual's step-into-the-dark is "perfectly reasonable." Reply Brief of Appellants, p. 15, citing *Hissong*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, at ¶ 39. We noted in *Hissong* that this is "particularly true when one is following the directions of another." *Id.* Under this theory, Mr. Gibbs argues that he was following Speedway's instructions and was induced by Speedway to step into a dark area to obtain the Kerosene.

{¶ 31} " 'The step-in-the-dark rule * * * holds generally that one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law.' " (Citation omitted.) *Hissong* at ¶ 38. "Because darkness is a warning, 'for one's own protection it may not be disregarded.' *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37, at paragraph three of the syllabus. If one does unreasonably disregard the darkness, she may be precluded from recovering damages for resulting injuries." *Hissong* at ¶ 38.

{¶ 32} In *Hissong*, we noted that:

Unlike the open-and-obvious test, the step-in-the-dark test does consider the plaintiff. Whether a particular plaintiff stepped into the dark depends on whether, when stepping into the darkness, the plaintiff was exercising ordinary care. For example, the plaintiff in *Flury v. Cent. Publishing House of Reformed Church in the United States* (1928), 118 Ohio St. 154, 160 N.E. 679, did not exercise ordinary care. The plaintiff slid open elevator doors and stepped inside (and fell) without thought or hesitation, without investigation, information, or

knowledge of what was lurking in the darkness. He did so even though several of the defendant's employees were lunching nearby, any one of whom could have helped him, but the plaintiff did not ask any of them. This failure to ask, said the court, raised an inference of the lack of ordinary care.

*Hissong* at ¶ 40.

{¶ 33}    In *Hissong*, we stated that "Here, the analytical question is whether Hissong unreasonably stepped into the darkness behind the door. The analysis subjectively asks whether Hissong acted negligently in her encounter with the darkness. The question for summary-judgment purposes, then, is whether reasonable minds can answer this question differently." *Hissong*, 186 Ohio App.3d 345, 2010-Ohio-961, 927 N.E.2d 1161, at ¶ 42. Based on the facts of that case, we concluded that reasonable minds could differ because of the clerk's specific instructions to the plaintiff, the fact that a trellis partially obscured the door to the actual restroom, and the fact that the plaintiff did not look down when she opened the incorrect door, because she was following instructions. *Id.* at ¶ 43-45. That is not the situation in the case before us. Of course, this issue would only arise if we found that Speedway owed a duty to Mr. Gibbs, or had been negligent. We have not found these matters to be true.

{¶ 34} Furthermore, contrary to the implication in the Gibbses' brief, the cited deposition transcripts do not indicate that Mr. Gibbs was instructed to do anything. See Reply Brief of Appellants, p. 15, citing Deposition of Glenn Gibbs, pp. 38 and 54. Mr. Gibbs was not following specific instructions given to him that day, and was not induced by Speedway or its employees in any way. As was noted, Mr. Gibbs had been to the Speedway store on numerous prior occasions, and had purchased Kerosene there before. He was aware of the lighting

situation before he entered the store. Instead of saying anything to Speedway's employees, or asking for assistance, Mr. Gibbs simply paid for his purchase and proceeded to walk into an area where he could not see. At Mr. Gibbs' deposition, the following exchange occurred:

Q. Why is it that you don't know what you – what caused you to fall?

A. Because I couldn't see. It was pitch black.

Q. I mean, you understand that if it's dark out you have to be a little more careful where you're walking, right?

A. Sure, sure.

Deposition of Glenn Gibbs, pp. 52-53.

{¶ 35} Accordingly, reasonable minds could not differ as to the fact that Mr. Gibbs was negligent as a matter of law.

### C. Negligence Per Se

{¶ 36} An exception to the open-and-obvious doctrine does exist where "a landowner's failure to comply with a *statutory* duty creates an open and obvious danger." (Citation omitted; Emphasis sic.) *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 13. The Gibbses contend that this exception applies, based on the Code of Ordinances of the City of West Carrollton, Title XV, Property Maintenance Code, Subsection 158.24(C). In this regard, we note that Subsections 158.24(A) and (B) of the Property Maintenance Code contain window and lighting requirements for habitable spaces and common halls and stairways. Subsection (C) goes on to state as follows:

Other spaces. All other spaces shall be provided with natural or artificial light sufficient to permit the maintenance of sanitary conditions, and the safe

occupancy of the space and utilization of the appliances, equipment and fixtures.

{¶ 37} In responding to the Gibbses' argument, Speedway first contends that negligence per se does not apply because West Carrollton's Property Code is administrative in nature, rather than "lawmaking." Speedway additionally argues that Subsection 158.24(C) is too general to support a claim of negligence per se. Finally, Speedway argues that even if negligence per se applied, Mr. Gibbs' claim fails because he cannot establish proximate cause.

{¶ 38} As a preliminary point, we reject Speedway's contention that a violation of Subsection 158.24(C) cannot constitute negligence per se because the ordinance is administrative in nature. In this regard, Speedway relies on *Chambers v. St. Mary's School,* 82 Ohio St.3d 563, 697 N.E.2d 198 (1998), which held that violation of administrative rules cannot constitute negligence per se. *Id.* at syllabus. The administrative regulation involved in Chambers was a violation of the Ohio Basic Building Code. *Id.* at 564. The basis of the court's decision was that "[t]he legislative process and accountability are the cornerstones of the democratic process which justify the General Assembly's role as lawmaker." *Id.* at 567. In contrast, "rulemaking by administrative agencies does not involve the collaborative effort of elected officials. Directors of administrative agencies are appointed by the Governor. It is these directors and/or their employees who propose and adopt administrative rules. Administrative agencies have the technical expertise to compose such rules. However, administrative agencies have no accountability as do the members of the General Assembly." (Citations and footnote omitted.) *Id.*

{¶ 39} Like the General Assembly, the governing bodies of municipalities engage in a legislative process, and their members are accountable to the public. As a result, violations of their rules could constitute negligence per se, assuming the other requirements for negligence per

se are met. *See, e.g., Cecilia Thatcher v. Lauffer Ravines, L.L.C.*, 10th Dist. Franklin No. 11AP-851, 2013-Ohio-765, ¶ 3 and 6; *Stenger v. Timmons*,10th Dist. Franklin No. 12AP-306, 2012-Ohio-6163, ¶ 9-12 (holding that a city ordinance did not meet the test for imposing negligence per se because it required the jury to answer at least two questions rather than imposing a fixed duty); *and Collier v. Libations Lounge, L.L.C.,* 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, ¶ 31 (holding that the plaintiff's claim for negligence per se failed because the city ordinance did not state a specific act with which the defendant must comply). Thus, municipal ordinances are not administrative and can furnish the basis for a finding of negligence per se if the particular ordinance otherwise meets the requirements of the doctrine.

**{¶ 40}** With respect to negligence per se, the Supreme Court of Ohio has said that:

Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se. Application of negligence per se in a tort action means that the plaintiff has conclusively established that the defendant breached the duty that he or she owed to the plaintiff. It is not a finding of liability per se because the plaintiff will also have to prove proximate cause and damages.

*Chambers,* 82 Ohio St.3d at 565, 697 N.E.2d 198, citing *Pond v. Leslein*, 72 Ohio St.3d 50, 53, 647 N.E.2d 477 (1995).

**{¶ 41}** "When the statute sets forth a general, abstract description of a duty, a violation thereof can be considered as evidence of negligence, but a violation does not of itself conclusively demonstrate the breach of a duty. If a statute sets forth a positive and definite standard of care, a violation of the statute constitutes negligence per se, and that violation conclusively proves that the defendant has violated a duty to the plaintiff * * *." *Mann v.*

*Northgate Investors, L.L.C.*, 138 Ohio St.3d 175, 2014-Ohio-455, 5 N.E.3d 594, ¶ 29.   "In such instances, the statute 'serves as a legislative declaration of the standard of care of a reasonably prudent person applicable in negligence actions.' Thus the 'reasonable person standard is supplanted by a standard of care established by the legislature.' "  *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496, 727 N.E.2d 1277 (2000), quoting 57A American Jurisprudence 2d (1989), 672, Negligence, Section 748.

{¶ 42}   A pertinent application of these principles occurred in *Abbuhl v. Orange Village*, 8th Dist. Cuyahoga No. 82203, 2003-Ohio-4662.  In that case,  the plaintiff was struck by a car in the early morning hours, while walking in a village parking lot.   He then sued Orange Village, contending that the village was negligent per se because it did not properly illuminate the parking lot and did not comply with its own ordinance on illumination.  *Id.* at ¶ 15 and 17.   The court of appeals disagreed, stating that:

> The applicable Orange Village ordinance, entitled "Illumination," states in relevant part: "[p]arking areas and associated walkways which are intended to be used during non-daylight hours shall be properly illuminated to adequately provide for safety."   In light of *Eisenhuth* [*v. Moneyhon,* 161 Ohio St. 367, 374, 119 N.E.2d 440 (1954)], we conclude Abbuhl's negligence per se claim lacks merit. The cited ordinance does not state a specific act to which Orange must comply.   It only generally suggests a rule of conduct. Without a specific rule establishing a standard of conduct to replace the "reasonable person" standard, a claim for negligence per se must fail.

*Abbuhl* at ¶ 19.

{¶ 43}   West Carrollton's ordinance is quite similar to the ordinance in *Abbuhl*, as it

requires "artificial light sufficient to permit * * * the safe occupancy of the space and utilization of the appliances, equipment and fixtures." Code of Ordinances of the City of West Carrollton, Title XV, Property Maintenance Code, Subsection 158.24(C). This only generally suggests a rule of conduct, and is not a specific rule that establishes a standard of conduct replacing the "reasonable person" standard. *Abbuhl* at ¶ 19. *Accord, Collier*, 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, at ¶ 30-31. *See also*, *Sikora*, 88 Ohio St.3d at 496, 727 N.E.2d 1277.

{¶ 44} Similarly, in *Jung v. Davies*, 2d Dist. Montgomery No. 24046, 2011-Ohio-1134, we concluded that a township code provision requiring risers and treads to be of uniform height to prevent a safety hazard did not give rise to negligence per se because the issue involved "judgment and interpretation." *Id.* at ¶ 35. We stressed that "[p]rovisions that support negligence per se analysis should be specific and detailed without the intervention of human judgment or decision making." *Id.*

{¶ 45} Accordingly, for the reasons discussed, the West Carrollton Code provision does not impose a specific rule of conduct and its violation does not constitute negligence per se obviating the open-and-obvious doctrine.

{¶ 46} Based on the preceding discussion, the Gibbses' sole assignment of error is overruled.

### III. Conclusion

{¶ 47} The Gibbses' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

Thomas J. Intili
Danielle Groves
Bradley A. Wright
Brian J. Augustine
Hon. Dennis J. Adkins