504

Bostwick & Bostwick, Chardon, for plaintiff in error.

H. J. Thrasher, Chardon, for defendant in error.

**CHARDON LAKES INN CO v MacBRIDE**

Ohio Appeals, 7th Dist, Geauga Co.

Decided Feb 27, 1937

### OPINION

By NICHOLS, J.

This cause comes into this court on error from the judgment of the Court of Common Pleas of Geauga county, wherein Estelle V. BacBride, plaintiff, recovered a judgment against The Chardon Lakes Inn Company, a corporation, defendant, for personal injuries received by her as a result of falling down an unlighted stairway

at the inn of the defendant company where plaintiff was an invitee.

Many grounds for reversal of the judgment of the Common Pleas Court are set forth in the petition in error, but upon the hearing here counsel for The Chardon Lakes Inn Company rely solely upon the proposition that the trial court erred in overruling its motion for directed verdict in its favor at the conclusion of plaintiff's evidence, which motion was renewed at the close of all the evidence in the case and was again overruled by the trial court. It is conceded that there is no error in the charge of the court to the jury or in the introduction or rejection of evidence.

It is the claim of counsel for the defendant that the evidence introduced at the time of the respective motions is such that reasonable minds could come to no other conclusion than that the plaintiff was guilty of contributory negligence which was a direct and proximate cause of her injuries. In determining whether the respective motions of the defendant were properly overruled, it is necessary that we give to the evidence the interpretation most favorable to plaintiff; and if reasonable minds could come to different conclusions therefrom as to whether plaintiff was guilty of negligence which was a direct and proximate cause of her injuries, then the motions were properly overruled and the cause properly submitted to the jury, and the judgment of the trial court should be affirmed.

On the 24th of August, 1933, plaintiff was a guest for luncheon at defendant's inn. At that time Miss Margaret Brooks was employed by the defendant company as hostess at the inn, a part of her duties being to receive guests at the door, give directions to the waitresses and to have general supervision of the inn. On the day in question, plaintiff inquired of the hostess for a ladies' rest room and was, by the hostess, directed to a hallway on the north side of the reception room and to turn to the left. In this hallway was a stairway leading to the second floor with a passage leading past the stairway to a wall in the rear of the hall. In the rear hall was a door leading into the ladies' rest room, and adjacent thereto, on the right, was another door which opened upon a stairway leading to the basement. Plaintiff, upon receiving instructions from the hostess to enter this hallway and turn to the left, proceeded along the area or hall to the door in the rear wall and upon turning the door knob found the door locked. There was no artificial light of any kind in the hallway. Plaintiff testified that she looked for some sign to identify which door was the one leading into the ladies' rest room and that there was no sign on either of the two doors in the hallway, but from an examination of the entire record, we think that the evidence was such as to clearly show that there was a sign above the door in the rear wall which read "Ladies" and another sign above the door adjacent thereto on the right which read "Men," but that at the time the hallway had not sufficient light to enable plaintiff to see these signs. What occurred when plaintiff turned to the left and walked down the hallway is shown by the testimony of the plaintiff as follows:

"A. I went straight down the hall to the door at the end. I turned the knob, and I found it locked. So, knowing that the dining room was adjoining there the other side, I presumed that this was the kitchen door, and that I had made a mistake, so I turned to the door at the right, and on that door I turned the knob and the door opened. But it was pitch black in there; I couldn't see anything. And so I reached, I put one foot very carefully, my left foot, in there, and then I turned with this left hand and clicked a switch on the wall, but no light came. So then I thought, well, this must be right, there is a floor here. I reached this other foot in there to reach up to see if there was a cord or something there, and I was precipitated down the stairway.

"Q. When you brought your right foot by the side of your left foot, there was no step nor flooring of any kind for your foot to contact? A. No; no step.

"Q. At that instant with your putting your foot down, you were precipitated, as you say, down to the bottom of the steps? A. Down the stairs. As I went down I grabbed for something, but it was pitch blackness,—darkness; not knowing where I was going or what I was going to land into. I grabbed for something to catch myself, but there was nothing.

"Q. Nothing for which you could catch? A. No."

. . .

On the inside of the door which plaintiff entered, there was an electric light operated by a pull cord suspended from the ceiling provided for turning on the light. When plaintiff opened the door this cord was pushed back out of her reach. Im-

mediately inside the door was a platform or landing of the full width of the door at the entrance to the stairway, which platform narrowed uniformly so that the rear of the landing was about seven inches narrower than at the entrance. When plaintiff entered the dark stairway she placed her left foot carefully upon the landing and searched for and found a light switch on the wall at her right. When this switch did not turn on the light, she put her right foot forward and by reason of the fact that the platform was narrower she was "precipitated" down the stairway because, as testified by her, when she put her right foot by the side of her left foot, there was no step or flooring of any kind for her right foot to contact. Plaintiff admitted it was so dark in the stairway that she could see nothing. The testimony further developed that the manager of the inn had given instructions to the employees "to keep the lights off at all times" for "economical reasons."

Under the foregoing statement of facts, giving them the interpretation most favorable to plaintiff, was the plaintiff guilty of negligence as a matter of law, which negligence was a direct and proximate contributing cause of her injuries; or did this evidence, after giving to it the interpretation most favorable to plaintiff, present a question of fact for the determination of the jury as to whether the plaintiff, at the time and place, acted as an ordinarily prudent person is accustomed to act under the same or similar circumstances?

On behalf of appellant we are cited to the case of **Flury v Central Publishing House, 118 Oh St, 154, 160 N. E., 679**, the third paragraph of the syllabus of which is as follows:

"The testimony of a plaintiff invitee, in an action for negligence, that from a lighted room he opened a closed metal-covered sliding door, was confronted with total darkness beyond the door, that he then stepped into such total darkness, to his injury, without any knowledge, information or investigation as to what such darkness might conceal, raises an inference of negligence on his part which, in the absence of any evidence tending to refute such inference, will require a directed verdict for the defendant."

We think it appears from this quoted syllabus that the failure of plaintiff invitee to make any "investigation as to what such darkness might conceal" distinguishes the facts upon which the syllabus is founded from the facts in the case at bar wherein the evidence clearly discloses that Mrs. MacBride exercised some care and made some investigation to determine what the darkness concealed inside the door which she opened; that she found a platform upon which her left foot rested securely; that she had a right to rely upon the law which requires the innkeeper to light the premises in accordance with the building code of the state of Ohio; that she acted in accordance with directions of the one in charge of the premises, and might reasonably rely upon the belief that she would not be directed into a place of danger by the person in charge of the inn.

The evidence is further to the effect that Mrs. MacBride carefully searched for the means which had actually been provided for the turning on of the light and it was only because the means provided for that purpose were such that the pull string of the light was pushed back by the opening of the door so that she was not able to turn on the light and thereby discover the dangerous fact that the landing of the stairway had been tapered away from the doorway. The gross negligence of the defendant in failing to keep the hallway lighted and in misleading the plaintiff into the belief that she was entering the ladies' rest room is definitely shown by the evidence. Indeed, it may be well questioned whether the conduct of the proprietor of the inn in willfully disregarding the provisions of the building code requiring persons in charge of such places to cause the same to be lighted would invoke the doctrine which relieves plaintiff from the claim of contributory negligence where the defendant has been guilty of willful or wanton misconduct, when there is also taken into consideration the fact that the hostess in charge of the inn had directed plaintiff to a rest room in the hallway and failed to warn plaintiff of the dangers which she encountered, although the hostess knew the hallway was dark and unlighted, and also had knowledge of the construction of the stairway and the means provided for lighting the same. But we do not find it necessary in this case to determine that defendant was barred of the defense of contributory negligence by reason of any willful or wanton misconduct upon its part.

An examination of the opinion in the case of **Flury v Central Publishing House, supra**, discloses the basis for the holding of the court in that case to be that plain-

tiff acted in "a wholly heedless manner, in total disregard of his own safety" and "in the absence of an emergency or an occasion for haste, without thought or hesitation, without investigation, information, or knowledge of what was concealed by the darkness," and further that the "plaintiff entered the elevator shaft from a room sufficiently lighted, either by natural or artificial means, or both, to enable the operation of printing presses therein, and in which at the time, within a few feet of the door to the elevator, several employees of the defendant were * * *, whom he must have known were competent to give him dependable information and direction."

Further in the opinion the court refers to the fact that plaintiff acted without investigation by sense of touch, or in any other manner, thereby raising an inference of the absence of that degree of care on his part that an ordinarily prudent man would have exercised under the existing circumstances. Thus the court recognized the true rule to be whether or not the plaintiff exercised some care giving rise to a question of fact for the jury as to whether such care was that used by an ordinarily prudent man; or that plaintiff exercised no care for his own safety thereby leaving no question of fact for the jury.

It can not be said that a person is guilty of negligence as a matter of law under all circumstances when such person enters a dark place where his sense of sight alone does not enable him to see what is before him. The use made of senses with which we are endowed, other than the sense of sight, may be such as to create a factual question as to whether the person entering a dark place has acted in a reasonably prudent manner and as ordinarily prudent persons usually act under like circumstances.

In the case of **Painesville Utopia Theatre Co. v Lautermilch, 118 Ohio St, 167, 160 N. E., 683,** the syllabus is as follows:

"Whenever, from conflicting evidence of the same witness or of different witnesses, it becomes necessary to weigh such conflicting evidence to determine wherein the probable truth lies, or from a combination of circumstances determine an ultimate fact upon the determination of which different minds might reasonably arrive at different conclusions, it is the province of the jury to perform that function. It is reversible error for the court to invade that province of the jury."

That the right of the trial court to direct a verdict exists only when the proof of the essential facts put in issue and the reasonable inferences deducible therefrom are such that the jury, as fair-minded men, should reasonably arrive at but one conclusion is held in the case of **Jacob Laub Baking Co. v Middleton, 118 Oh St, 106, 160 N. E., 629.**

As sustaining the proposition that the mere fact that plaintiff proceeded in the dark subjected her to the charge that she was guilty of negligence directly contributing to her injuries, we are referred to the case of **McKinley v Niederst, 118 Oh St, 334, 160 N. E., 850.** We think the facts in that case are easily distinguishable from the case at bar. There the Supreme Court held that the petition of plaintiff did not state a cause of action against the defendant on the ground that the owner of an apartment house, being rented to several tenants with halls and stairways in common, owes no common-law duty to keep such halls and stairways lighted during the night season. Here, by the provisions of §843-9, GC, every hotel and restaurant in the state shall have proper plumbing, lighting and ventilation which shall conform to the provisions of the building code so far as they apply. It is axiomatic that the requirement of having proper lighting is not complied with by the proprietor of a hotel or restaurant by simply equipping the hotel with an electric lighting system and then requiring that the lights be kept turned off for economical reasons. The inn of defendant was an eating house, as shown by the evidence, and thus comes within the definition of a "restaurant." Giving to the evidence in this case the interpretation favorable to plaintiff, it must be held that the inn was not properly lighted.

In the case of **McKinley v Niederst, supra,** the question of the contributory negligence of the plaintiff could not arise because there was no negligence of the defendant with which to contribute, and it follows that the question of contributory negligence was not necessary to a decision of the court. But aside from the phase of the case just discussed, we think the facts in the case at bar are easily distinguishable from those dealt with by the Supreme Court in the last mentioned case.

We are further cited by the appellant to the case of **National Refining Co. v Strichmaker, 49 Oh Ap 467 (18 Abs 97), 197 NE 364,** decided by the Court of Appeals of Stark County, Nov. 20, 1934, and which is

claimed to be decisive of the proposition involved in the case we have under consideration. The syllabus of that case is as follows:

"Where a customer at a lunch room goes into a strange place in search of a toilet, opens a closed and unmarked door, stands on the threshold, reaches into empty space and utter darkness and gropes around until she falls down a flight of steps in which no defect is claimed to exist, reasonable minds could come to but one conclusion that she was contributorily negligent, thus requiring a directed verdict for the defendant in her action for personal injuries against the proprietor of the lunch room."

While we are not bound by the decision of the Court of Appeals for Stark county, we have very high regard for the decisions of that court, but we are unable to agree that the case is decisive of the question involved here. In the Stark county case the Court of Appeals found that the action and conduct of the plaintiff were the sole cause of her injuries, and from the statement contained in the opinion we are inclined to agree that the plaintiff proved no negligence upon the part of the defendant. Further, the Court of Appeals refused to pass upon the question whether the plaintiff was an invitee. In the case here under consideration it is conceded that plaintiff was an invitee. In the Stark County case the plaintiff was told that the toilet was "around to the rear of the building," nevertheless, after going to the rear of the building, she proceeded on around the building to the east side thereof, ascended three outside steps, and turned the knob or latch on a door she found there and pushed it open and, standing on the sill or top step, reached into the door and felt around, trying to locate a light or cord, although she admitted that she had no reason to expect to find a light cord except that such things were sometimes found in toilets. In that case, plaintiff's petition did not claim any defect to exist in the stairs or the construction thereof. In the case at bar, plaintiff's petition alleges and the proof sustains the fact that the landing at the head of the stairs down which plaintiff fell was irregular and negligently cut off at an angle. In the case here under consideration, the plaintiff proceeded down the hallway in the exact direction indicated by the hostess of the inn. In the Stark county case, as stated in the syllabus, the plaintiff went into a strange place in search of a toilet; but not so in the case at bar.

From our examination of the record and authorities, we are of opinion that from the evidence in this case reasonable minds might differ upon the question whether plaintiff did or did not act as a reasonably prudent and careful person would customarily act under like circumstances, and it follows that the trial court did not err in overruling the motions of the appellant for directed verdict. There being no other error assigned or claimed, and the negligence of the defendant being apparent, it follows that the judgment of the trial court must be and the same is affirmed.

Judgment affirmed.

CARTER, PJ., concurs.
ROBERTS, J., dissents.