[Cite as *Cash v. Thomas & King, Ltd.*, 2016-Ohio-175.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO


MARGARET J. CASH,                          :          **O P I N I O N**

      Plaintiff-Appellant,           :

    - vs -                              :          **CASE NO.  2015-T-0030**

THOMAS & KING LIMITED                      :
LIABILITY COMPANY #104,
d.b.a. APPLEBEES, et al.,                   :

      Defendant-Appellee.            :


Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2013 CV 02433.

Judgment: Affirmed.


*Walter Kaufmann,* Boyd, Rummell, Carach & Curry Co., L.P.A., Huntington Bank Building, 4th Floor, P.O. Box 6565, Youngstown, OH 44501 (For Plaintiff-Appellant).

*Forrest A. Norman, III,* Dickie, McCamey & Chilcote, P.C., 2820 Key Tower, 127 Public Square, Cleveland, OH  44114 (For Defendant-Appellee).


DIANE V. GRENDELL, J.

{¶1}  Plaintiff-appellant, Margaret J. Cash, appeals the Judgment of the Trumbull County Court of Common Pleas, granting defendant-appellee, Thomas and King, Inc.'s ("Applebee's"), Motion for Summary Judgment.  The issue before this court is whether darkness and the close proximity of a parking stop or bumper to the curb constitute attendant circumstances, creating a genuine issue of material fact as to

whether the parking bumper is an open and obvious hazard. For the following reasons, we affirm the decision of the court below.

{¶2} On December 19, 2013, Margaret J. Cash filed a Complaint in the Trumbull County Court of Common Pleas against Thomas & King Limited Liability Company #104, d.b.a. Applebee's, and a John Doe Company. The Complaint alleged, in relevant part:

> 3. On or about May 18, 2012 the Plaintiff was a business invitee, and customer at the Applebee's Restaurant. Upon exiting the building and attempting to traverse the parking lot of the restaurant to her parked automobile, the Plaintiff tripped and fell over a concrete barrier which was a part of said parking lot.
>
> 4. Plaintiff fell over said barrier as a direct result of an unreasonably dangerous and defective condition of the parking lot, namely the placement and design of the parking lot which created a dangerous obstruction over which invitees were required to pass, of which the Defendants knew, or with reasonable inspection [could] have discovered, and which the Defendants did not alleviate. Further, the Defendants failed to warn the Plaintiff, and other invitees of said dangerous and defective condition, all of which constitutes negligence on the part of the Defendants.
>
> 5. As a direct and proximate result of the Defendants' negligence, the Plaintiff sustained injuries to her face, head, neck, left arm, leg and other parts of her body, all causing great pain and

suffering of mind and body, extreme emotional distress and permanent injury.

**{¶3}** On January 22, 2014, Thomas and King, Inc., improperly named as Thomas & King Limited Liability Company #104, filed its Answer. By stipulation of the parties, Thomas and King, Inc. was substituted for the named defendant.

**{¶4}** On November 24, 2014, Applebee's filed a Motion for Summary Judgment.

**{¶5}** On January 23, 2015, Cash filed her Memorandum Contra Defendant's Motion for Summary Judgment.

**{¶6}** The following evidence was before the trial court:

**{¶7}** Cash testified by deposition that, on May 18, 2012, she was driven by Dennis Reisinger, her son-in-law, with her daughter, Lisa Reisinger, to Applebee's at Great East Plaza in Niles. Cash sat in the rear passenger seat. Dennis parked in a handicapped parking space, using her parking sticker. Cash had been to this Applebee's "quite often" before the date in question and "almost always" parked in that handicapped space. Upon exiting the vehicle, Cash walked toward the rear of the vehicle and around an adjacent landscape island to reach the entrance to the restaurant.

**{¶8}** Cash testified that they left the restaurant at about 7:30 p.m. or "dusk." Cash followed Lisa and Dennis to the vehicle, this time approaching from the front with the vehicle on her right and the landscape island on her left: "Dennis and Lisa were in front of me and I was walking behind them and all of a sudden * * * I did a belly flop and I landed on my face." Although she did not recall what made her fall, Cash testified "it had to have been the curb, the [parking] bumper." Cash was not looking down at the

3

parking lot at the time of her fall and testified that she would have seen the bumper had she done so.[1]

{¶9} Lisa testified by deposition that they left the restaurant about 8:00 p.m. when it was "dark." Although she did not see her mother fall, she believed that she tripped on the parking bumper because "that's the only thing that would have made sense."

{¶10} Dennis testified by affidavit that they left the restaurant about 9:30 p.m.: "it was very dark right where the parking bumper was on the passenger side because the shadows of the bushes and the car blocked the light from shining over that area." After Cash fell, Joel Shields, a manager at Applebee's, came to the scene. Cash "told him she tripped over, or fell off, the side of the parking bumper which was protruding out [six to nine inches] from the front side of the car, and did so because she could not see it." When the four of them "looked directly at the area where the bumper was between the car and the bushes, [they] could not recognize or make out the bumper because it was so dark." Attached to Dennis' affidavit were pictures of the parking bumper and measurements of the distance between the bumper and the curb.

{¶11} Shields testified by deposition that, when he went to assist Cash, Lisa was "pointing out * * * the bumper block that's in between the curb and the parking space itself," which extended out beyond the side of the car by about "six to eight inches." Shields recalled Cash saying, "there's no way I could see that." Shields "made the comment that with there being shadows on there * * * [he] could see where you would find it hard to see, especially if you weren't walking and looking down." Shields noted

1. Deposition of Margaret Cash: Q. Were you looking down at the parking lot? A. No. Q. If you had been looking down at the parking lot, do you think you would have seen the parking bumper? A. Yes.

4

that "the majority of the lighting at that location is behind and beside the building * * * more from the general lighting from the mall parking lot." Attached to Shields' deposition were pictures of the parking space taken that evening.

{¶12} On March 16, 2015, the trial court granted summary judgment in Applebee's' favor: "The parking bumper which caused Mrs. Cash's fall was an open and obvious danger and as such, there is no duty on behalf of Thomas and King as the premises owner."

{¶13} On March 30, 2015, Cash filed a Notice of Appeal. On appeal, she raises the following assignments of error:

{¶14} "[1.] The Trial Court committed prejudicial error in failing to apply the standard required by Civil Rule 56(C) in its decision granting summary judgment for Defendant."

{¶15} "[2.] The Trial Court committed prejudicial error in finding the open and obvious rule applied to the facts of this case."

{¶16} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "Under this standard, the reviewing court conducts an independent review of the evidence before the trial court and renders a

5

decision de novo, i.e., as a matter of law and without deference to the conclusions of the lower court." (Citation omitted.) *Green Tree Servicing LLC v. Brandt*, 11th Dist. Lake No. 2014-L-137, 2015-Ohio-4636, ¶ 13.

{¶17} "[I]n order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984).

{¶18} "When the alleged negligence occurs in the premises-liability context, the applicable duty is determined by the relationship between the landowner and the plaintiff." *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10. "Business invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986). "It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Id.*; *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985) ("[a] shopkeeper owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition so that its customers are not unnecessarily and unreasonably exposed to danger").

{¶19} Cash's relationship to Applebee's was that of a business invitee, and so Applebee's owed Cash a duty of ordinary care to maintain the premises in a reasonably safe condition.

{¶20} It has long been the law in Ohio that "[a]n occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45,

6

233 N.E.2d 589 (1968), paragraph one of the syllabus; *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, syllabus ("[w]here a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises").

{¶21} Nothing in the record before us suggests that the parking stop or bumper was inherently dangerous or presented a risk that Cash could not reasonably have been expected to discover and protect herself against. Without more, the bumper in the present case presented an open and obvious hazard. *Furano v. Sunrise Inn of Warren, Inc.*, 11th Dist. Trumbull No. 2008-T-0132, 2009-Ohio-3150, ¶ 18 ("[t]he hazard presented by a tire stop * * * is so open and obvious that anyone exiting a vehicle which has just pulled into a parking spot fronted by a tire stop is reasonably expected to take precautions and negotiate his or her steps around the elevation"); *May v. Ruby Tuesday, Inc.*, N.D.N.Y. No. 5:13-CV-170, 2014 U.S. Dist. LEXIS 140090 (Oct. 2, 2014), 13-14 ("[g]enerally, '[a] wheel stop or concrete parking lot divider which is clearly visible presents no unreasonable risk of harm'") (citation omitted).

{¶22} The application of the open and obvious doctrine may be precluded "when there are 'attendant circumstances' surrounding the event that distract the invitee and reduce the degree of care an ordinary person would otherwise exercise." *Haller v. Meijer, Inc.*, 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10; *Daher v. Bally's Total Fitness*, 11th Dist. Lake No. 2014-L-061, 2015-Ohio-953, ¶ 27 ("the 'attendant circumstances' of a slip and fall may create a material issue of fact as to whether the danger was open and obvious") (citation omitted). "An attendant circumstance is any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard," thereby "significantly enhanc[ing] the

7

danger of the hazard." *Haller* at ¶ 10; *Daher* at ¶ 27 ("attendant circumstances are all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event") (citation omitted).

{¶23} Cash identifies six such circumstances which she claims render the open and obvious doctrine inapplicable: "[i]t was night time and dark"; "[o]nly six to nine inches of the bumper protruded beyond the passenger side of the parked car"; "[t]he shadows of the parked car on the one side and the bushes in the landscape island immediately adjacent obscured any artificial light"; "[t]here was no direct artificial light from the Applebee's parking lot"; "[t]he bumper was not painted yellow * * * blend[ing] into the adjacent pavement"; and, since she "exited the car" and "walked to the rear of the car" upon arrival, she "could not know that the bumper protruded since the car door obscured the front of the car." Appellant's brief at 21-22.

{¶24} Having considered the evidence of record, we find that none of the circumstances identified by Cash are significant enough to either reduce the degree of care she was required to exercise for her own safety or enhance the danger of the hazard.

{¶25} Cash emphasizes that, when the evidence is construed in her favor, it was so dark that she could not have discerned the hazard even had she been focusing on the ground before her. The argument, however, that darkness constitutes an attendant circumstance so as to preclude the application of the open and obvious doctrine has been consistently rejected by Ohio courts.

{¶26} Darkness, whether naturally occurring or as the result of inadequate lighting, has been rejected as an attendant circumstance for two principal reasons:

8

{¶27} (1) "'Darkness' is always a warning of danger, and for one's own protection it may not be disregarded." *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph three of the syllabus; *Swonger v. Middlefield Village Apts.*, 11th Dist. Geauga No. 2003-G-2547, 2005-Ohio-941, ¶ 13 ("[s]ince darkness itself constitutes a sign of danger, the person who disregards a dark condition does so at his or her own peril"); *McCoy v. Kroger Co.*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965, ¶ 16 ("darkness increases rather than reduces the degree of care an ordinary person would exercise"); *Shipman v. Papa John's*, 3rd Dist. Shelby No. 17-14-17, 2014-Ohio-5092, ¶ 30 ("many Ohio courts have recognized that darkness is an open and obvious condition") (cases cited); *Gibbs v. Speedway LLC*, 2014-Ohio-3055, 15 N.E.3d 444, ¶ 29 (2nd Dist.) ("[t]he inability to see by virtue of the tanker blocking the light was an open and obvious danger, and Speedway owed no duty to Mr. Gibbs to warn him about it").

{¶28} (2) "One who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night * * *." *Jeswald* at paragraph one of the syllabus; *Swonger* at ¶ 12 ("Ohio law is clear that a business owner is under no affirmative duty to light walkways and public parking areas outside their buildings to accommodate invitees"); *Shipman* at ¶ 31 ("Ohio Courts have found that there is no obligation for a business owner to illuminate the parking area"); *Scheetz v. Kentwood, Inc.*, 152 Ohio App. 3d 20, 2003-Ohio-1209, 786 N.E.2d 501, ¶ 10 (11th Dist.) ("[b]ecause appellee had no duty to provide lighting in the restaurant parking lot, it could not have breached any such duty by failing to illuminate its parking lot on the night Mrs. Scheetz fell").

9

{¶29} Accordingly, Cash's inability to see the bumper, whether as a consequence of the time of day, shadows cast by the car and bushes, or the failure to provide artificial lighting, does not create a genuine issue of material fact with respect to the applicability of the open and obvious doctrine.

{¶30} The other circumstances also fail to mitigate the open and obvious nature of the hazard posed by the parking bumper, i.e., they were not "so abnormal that [they] unreasonably increased the normal risk of a harmful result or reduced the degree of care an ordinary person would exercise." (Citation omitted.) *Shipman* at ¶ 29.

{¶31} The bumper was not painted yellow but did not, for this reason, blend into the adjacent pavement. As the photographs in the record demonstrate, the bumper was made of concrete (a light gray) which contrasts with the asphalt parking lot (black).

{¶32} The protrusion of the parking bumper six to nine inches beyond the passenger side of the vehicle is not a remarkable circumstance and, in any event, has no bearing on the open and obvious nature of the hazard. Cash contends the protrusion of the bumper was even more of a risk because there were only twelve inches between the end of the bumper and the curb of the landscape island, through or across which Cash had to traverse in order to reach the passenger side of the car. Again, the twelve-inch space between the bumper and the curb is not the sort of circumstance that renders the parking lot unreasonably dangerous. *Furano*, 2009-Ohio-3150, at ¶ 27 ("[p]atrons using a parking spot fronted by a tire stop are reasonably expected to, upon exiting their vehicles, negotiate their steps in the close quarters between parked vehicle").

{¶33} Finally, the fact that, upon arriving at Applebee's, Cash decided to walk around the back of the car and so avoid the tire stop does not alter the outcome.

Cash's avoidance of the bumper when it was lighter outside and she could have observed it more easily is hardly an unusual circumstance or a condition for which Applebee's could be held responsible. *Gamby v. Fallen Timbers Ents.*, 6th Dist. Lucas No. L-03-1050, 2003-Ohio-5184, ¶ 13 ("[t]he breadth of the exception [for attendant circumstances] * * * does not * * * encompass the common or the ordinary"); *Backus v. Giant Eagle*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (7th Dist. 1996) ("an attendant circumstance is [a] circumstance * * * which is beyond the control of the injured party"); *Lang v. Holly Hill Motel, Inc.*, 4th Dist. Jackson No. 06CA18, 2007-Ohio-3898, ¶ 25 ("[a]ttendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making").

{¶34} Cash's assignments of error are without merit.

{¶35} For the foregoing reasons, the Judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of Applebee's, is affirmed. Costs to be taxed against the appellant.

TIMOTHY P. CANNON, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

11