[Cite as *Tomasko v. Sohnly*, 2016-Ohio-2698.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| JUDITH TOMASKO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellant | : | Hon. WIliam B. Hoffman, J. |
| | : | Hon. John W. Wise, J. |
| -vs- | : | |
| | : | |
| THOMAS J. SOHNLY, JR., ET AL. | : | Case No. 15-CAE-10-0078 |
| | : | |
| Defendants-Appellees | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common
Pleas, Case No. 14-CV-06-0428


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      April 21, 2016


APPEARANCES:

For Plaintiff-Appellant

MARK J. OBRAL
THOMAS J. SILK
55 Public Square
Suite 1700
Cleveland, OH  44113

For Defendants-Appellees

JOSEPH A. BUTAUSKI
6265 Riverside Drive
Suite A
Dublin, OH  43017

*Farmer, P.J.*

{¶1} Appellees, Thomas and Lila Sohnly, owned a four-bedroom rental home in Hocking County, Ohio. Appellees hired Michael and Judy Hard to manage the property.

{¶2} In 2011, appellant, Judith Tomasko, and her sisters, Susan Wenz, Lynn Walsh, and Patricia Brennan, and a friend, Kim Wronski, rented the home for a four-day vacation. Upon arrival, Susan made a walk-through of the home. She noticed the balcony floor off the bedroom suite was "spongy" and the step leading to the balcony was deep. No one in the group used that bedroom/balcony suite.

{¶3} In 2012, the group rented the same home for another four-day vacation. The balcony floor had been repaired. On June 25, 2012, the group made a fire in the fire pit located on the ground floor patio. Appellant and Lynn went upstairs to view the fire from the balcony. It was pitch dark outside and there was no exterior illumination for the balcony. Appellant opened the sliding glass door from the bedroom to the balcony, held on to the door, stepped down, and fell, sustaining injuries.

{¶4} On June 10, 2014, appellant filed a complaint against appellees, claiming negligence for having an excessive step from the bedroom to the balcony and negligence per se for failing to comply with applicable building codes regarding the height of the step. On June 5, 2015, appellees filed a motion for summary judgment and appellant responded on July 6, 2015. By judgment entry filed September 18, 2015, the trial court granted the motion, finding appellees were not negligent per se and the excessive step was an open and obvious hazard.

{¶5} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶6} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT WHERE THE NONMOVING PARTY PRESENTED A GENUINE ISSUE OF MATERIAL FACT AS TO WHETHER THE EXCESSIVE TRANSITION HAZARD ON THE BALCONY WAS OPEN AND OBVIOUS TO MS. TOMASKO AT THE TIME OF HER FALL."

II

{¶7} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING A LACK OF NEGLIGENCE *PER SE* WHERE CONDITIONS ON THE SOHNLYS' BALCONY VIOLATED LOCAL COUNTY BUILDING CODE AT THE TIME OF THE ACCIDENT."

{¶8} Appellant challenges the trial court's decision on summary judgment as to negligence per se and the application of the open and obvious doctrine.

{¶9} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 1996-Ohio-211:

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379,

citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶10} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35 (1987).

{¶11} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265(1986). The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: "***a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has

no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶12} Prior to addressing the two issues raised by appellant, it is necessary to determine under a summary judgment standard the facts applicable to the arguments. Upon review of the record, we find the following facts:

{¶13} 1. In June 2012, appellees rented out their four-bedroom rental home to appellant and others.

{¶14} 2. The balcony where the fall occurred was off a bedroom suite with no exterior illumination. Tomasko depo. at 112; Walsh depo. at 29. There was a little bit of light from a small table lamp in the bedroom. Wenz depo. at 38.

{¶15} 3. Appellant and her sisters had rented the home the year before, but they did not use the bedroom/balcony suite that year. Tomasko depo. at 89; Walsh depo. at 15; Wenz depo. at 17-18.

{¶16}  4. The night of the fall, the group had built a fire in the ground floor fire pit, and appellant and Lynn went upstairs to see how the fire would look from the balcony. Tomasko depo. at 109; Walsh depo. at 26.

{¶17}  5. Appellant had never been on the balcony prior to her fall.[1]  Tomasko depo. at 157.

{¶18}  6. The step down from the bedroom to the balcony floor was 10.75 inches. *See* December 5, 2013 Report by Richard Zimmerman, attached to the July 6, 2015 Opposition Motion.

{¶19}  7. Mr. Zimmerman, appellant's expert, opined the 10.75 inch step was an "excessively high step transition" and its height would not have been "discernable from the interior of the sliding glass door opening."  *Id.*

{¶20}  8. Appellant opened the sliding glass door from the bedroom to the balcony, held on to the door, stepped down, and fell, sustaining injuries.  Tomasko depo. at 113-115; Walsh depo. at 33.

{¶21}  9. It was pitch dark when the incident occurred.  Tomasko depo. at 105, 110.  Because of the darkness, appellant did not appreciate the depth of the step.  *Id.* at 115.

{¶22}  10. Appellant agreed if it had been daylight, she would have been able to see the difference in elevation between the bedroom and the balcony.  *Id.* at 115-116.

---

[1]The trial court incorrectly found appellant had prior knowledge of the depth of the step before her fall.  Appellant's sister Susan had been on the balcony during the 2011 visit and noted the deep step, but did not tell the group, and there is no evidence to suggest appellant was aware of the deep step.  Tomasko depo. at 157; Wenz depo. at 16-17.

{¶23} During cross-examination, appellant stated she opened the sliding glass door to the balcony, held on to the door, stepped out, and fell. *Id.* at 113-115. Appellant did not look down as she stepped out, and did not "foot check" to see if the balcony was level. *Id.* at 120. On direct examination, appellant testified she carefully walked out on the balcony, slowly putting her right foot down, feeling for what might be below her, but she never felt the floor and gravity took over and she fell. *Id.* at 154-155.

{¶24} Contradictory testimony cannot be used to create a genuine issue of material fact absent an explanation for the contradiction. *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455 (involving deposition testimony and a subsequent contradictory affidavit).

{¶25} We find appellant's actions were fluid and continual with the goal of getting on to the balcony.

I

{¶26} Appellant claims the trial court erred in finding the open and obvious doctrine applied, as her actions in stepping out onto the balcony demonstrated she took reasonable precautions under the circumstances. We disagree.

{¶27} "[I]n order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Products, Inc.,* 15 Ohio St.3d 75, 77 (1984). As a business invitee, appellees owed appellant a duty of ordinary care to maintain the premises in a reasonably safe condition. *Paschal v. Rite Aid Pharmacy, Inc.,* 18 Ohio St.3d 203 (1985). "An occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may

reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey,* 13 Ohio St.2d 45 (1968), paragraph one of the syllabus. In *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 13-14, the Supreme Court of Ohio definitively explained and endorsed the open and obvious doctrine as follows:

> We continue to adhere to the open-and-obvious doctrine today. In reaching this conclusion, we reiterate that when courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty. By focusing on the duty prong of negligence, the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff. Ferrell, Emerging Trends in Premises Liability Law: Ohio's Latest Modification Continues to Chip Away at Bedrock Principles (1995), 21 Ohio N.U.L.Rev. 1121, 1134. Even under the Restatement view, we believe the focus is misdirected because it does not acknowledge that the condition itself is obviously hazardous and that, as a result, no liability is imposed.
>
> Consequently, we hold that the open-and-obvious doctrine remains viable in Ohio. Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises. *Sidle v. Humphrey*

(1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, approved and followed.

{¶28} Appellant conceded "darkness" is a dangerous condition for the application of the open and obvious doctrine. Appellant freely admitted had she stepped out onto the balcony in daylight, she would have appreciated the height of the step. Tomasko depo. at 115-116.

{¶29} In *Hissong v. Miller*, 186 Ohio App.3d 345, 2010-Ohio-961 (2nd Dist.), our brethren from the Second District explained the following at ¶ 38-42:

"The step-in-the-dark rule***holds generally that one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." (Citations omitted.) *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 276, 74 O.O.2d 427, 344 N.E.2d 334. This rule does not prove contributory negligence but simply "raises an inference of the lack of prudence and ordinary care on the part of a plaintiff" - in other words, an inference that the plaintiff's own negligence, at least in part, caused her injury. Id. at paragraph one of the syllabus. However, the inference does not arise "[i]f conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary,

deliberate step into unknown darkness." Id. at 276, 74 O.O.2d 427, 344 N.E.2d 334. The rationale behind the rule is grounded in the idea that " '[d]arkness is nature's own warning to arouse the natural instinct of self-preservation, the first law of nature.' " *Parker v. Vaughn* (Aug. 7, 1998), Montgomery App. No. 16939, 1998 WL 639305, quoting *Cent. Publishing House v. Flury* (1927), 25 Ohio App. 214, 227, 157 N.E. 794. Because darkness is a warning, "for one's own protection it may not be disregarded." *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37, at paragraph three of the syllabus. If one does unreasonably disregard the darkness, she may be precluded from recovering damages for resulting injuries. See id. at 227, 44 O.O.2d 196, 239 N.E.2d 37.

But as the rule recognizes, in some situations, a person's step into the darkness is perfectly reasonable. As one court has explained, "[i]t cannot be said that a person is guilty of negligence as a matter of law under all circumstances when such person enters a dark place where his sense of sight alone does not enable him to see what is before him." *Chardon Lakes Inn Co. v. MacBride* (1937) 56 Ohio App. 40, 46, 9 O.O. 206, 10 N.E.2d 9. In some places, one expects to find darkness, so darkness is not always unusual and not always a warning of danger. A person does not act negligently by failing to look for danger where she has no reason to expect it or where she has reason *not* to expect it. For example, a person can be induced by another to enter darkness, having been instilled with a sense of safety in doing so. See 62A American Jurisprudence 2d (2009) Premises

Liability, Section 761 ("The step in the dark rule, and similar rules which find the plaintiff to be negligent as a matter of law, are inapplicable***where the circumstances were such that an ordinary prudent person might be lulled into a false sense of safety").  This is particularly true when one is following the directions of another.  See id. at Section 759 ("Conduct which would otherwise constitute negligence as a matter of law does not bar a plaintiff's recovery where such conduct is done at the direction of, or in accordance with instructions from, the defendant or the defendant's agent").  Indeed, "[i]n holding that a person who walked in the dark has not been negligent, the courts often rely in part on the fact that such individual correctly followed instructions regarding how to proceed."  Id. at Section 759.

Unlike the open-and-obvious test, the step-in-the-dark test does consider the plaintiff.  Whether a particular plaintiff stepped into the dark depends on whether, when stepping into the darkness, the plaintiff was exercising ordinary care.  For example, the plaintiff in *Flury v. Cent. Publishing House of Reformed Church in the United States* (1928), 118 Ohio St. 154, 160 N.E. 679, did not exercise ordinary care.  The plaintiff slid open elevator doors and stepped inside (and fell) without thought or hesitation, without investigation, information, or knowledge of what was lurking in the darkness.  He did so even though several of the defendant's employees were lunching nearby, any one of whom could have helped him, but the plaintiff did not ask any of them.  This failure to ask, said the court, raised an inference of the lack of ordinary care.

Conversely, the plaintiff in *MacBride* did exercise ordinary care by asking and then following directions. The plaintiff had asked the hostess at the defendant's inn for a ladies' restroom. The hostess's directions led the plaintiff to the rear of a hallway where there was the door to the ladies' restroom and, immediately to the right of that door, another door, behind which, unbeknownst to the plaintiff, were stairs that descended to the cellar. The plaintiff apparently (the court's recitation of the facts is somewhat unclear) tried to open the restroom door and found it locked. Thinking she had made a mistake, she turned to the door on the right and opened it. After the plaintiff stepped inside and onto an unseen landing, because the light at the end of the hall was quite dim, she began searching for a light switch. She eventually stepped off the landing, lost her balance, and bounced down the unseen stairs. Reversing the trial court's grant of summary judgment to the defendant, the court distinguished *Flury* based on that plaintiff's failure to make any investigation. In contrast, said the court, the plaintiff here acted in accordance with the directions of one in charge of the premises. The plaintiff, said the court, "might reasonably rely upon the belief that she would not be directed into a place of danger by the person in charge of the inn." *MacBride,* 56 Ohio App. at 44, 9 O.O. 206, 10 N.E.2d 9.

Here, the analytical question is whether Hissong unreasonably stepped into the darkness behind the door. The analysis subjectively asks whether Hissong acted negligently in her encounter with the darkness. The

question for summary-judgment purposes, then, is whether reasonable minds can answer this question differently.

{¶30} In *Johnson v. Regal Cinemas, Inc.,* 8th Dist. Cuyahoga No. 93775, 2010-Ohio-1761, our brethren from the Eighth District stated the following at ¶ 16:

We recognize that an issue of fact exists with regard to whether there was any lighting in the theater when appellant fell. We find, however, that this is not a genuine issue of *material* fact. Assuming arguendo that the theater was completely dark, as appellant testified in her deposition, she would still be barred from recovery due to the "step-in-the-dark" rule. This rule mandates that an individual who intentionally steps from a lighted area to total darkness, without investigating the possible dangers concealed by the darkness, is liable for his or her own injuries.

{¶31} Appellant argues her actions is stepping out onto the balcony are equal to "attendant circumstances":

The application of the open and obvious doctrine may be precluded "when there are 'attendant circumstances' surrounding the event that distract the invitee and reduce the degree of care an ordinary person would otherwise exercise." *Haller v. Meijer, Inc .,* 10th Dist. Franklin No. 11AP-290, 2012-Ohio-670, ¶ 10; *Daher v. Bally's Total Fitness,* 11th Dist. Lake

No.2014-L-061, 2015-Ohio-953, ¶ 27 ("the 'attendant circumstances' of a slip and fall may create a material issue of fact as to whether the danger was open and obvious") (citation omitted). "An attendant circumstance is any significant distraction that would divert the attention of a reasonable person in the same situation and thereby reduce the amount of care an ordinary person would exercise to avoid an otherwise open and obvious hazard," thereby "significantly enhanc[ing] the danger of the hazard." *Haller* at ¶ 10; *Daher* at ¶ 27 ("attendant circumstances are all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event") (citation omitted).

*Cash v. Thomas & King LLC,* 11th Dist. Trumbull No. 2015-T-0030, 2016-Ohio-175, ¶ 22.

{¶32} Therefore, the issue is whether an attendant circumstance occurred in this case. Appellant argues she held on to the sliding glass door as she carefully stepped out and felt around with her foot for the balcony floor. To say the least, this is a very liberal interpretation of the evidence presented. Lynn, who was behind appellant as they went upstairs and observed appellant exit the bedroom to the balcony, gave a more accurate interpretation: "I was walking behind her. I walked through the door. I had heard her open the door. I'm behind her. When I walked into the room, she had her left hand on the door. She was stepping out with her right foot, and then I - - you know, it happened

within a flash of a second. I heard her - - the thud and I heard her scream." Walsh depo. at 32-33.

{¶33} Appellant was on a mission to go out on the balcony. She was aware it was pitch dark and the light from the little bedroom table lamp was minimal. Tomasko depo. at 111-112. Appellant was intent on getting out onto the balcony and literally took a step into the dark. *Id.* at 120. This interpretation is best illustrated by appellant's own description of her fall to others minutes after the tumble, "she opened up the door and she stepped out and down she went" and "the step never ended and I fell." Wenz depo. at 52; Wronski depo at 22.

{¶34} Upon review, we find the trial court did not err in finding the open and obvious doctrine controlled and attendant circumstances did not distract appellant from taking necessary precautions in stepping out onto the balcony.

{¶35} Assignment of Error I is denied.

II

{¶36} Appellant claims the trial court's decision on negligence per se was incorrect because the deviation in step depth of 2.25 inches from the building code constituted negligence per se. We disagree.

{¶37} As explained in *Swoboda v. Brown,* 129 Ohio St. 512 (1935), paragraph four of the syllabus:

> The distinction between negligence and 'negligence per se' is the means and method of ascertainment. The first must be found by the jury from the facts, the conditions and circumstances disclosed by the evidence;

the latter is a violation of a specific requirement of law or ordinance, the only fact for determination by the jury being the commission or omission of the specific act inhibited or required.

{¶38} As set forth in Mr. Zimmerman's December 5, 2013 Report, attached to the July 6, 2015 Opposition Motion, the applicable building code states the following:

At the time of the incident and at all times prior, the subject residence was within the jurisdiction of Hocking County, OH, which has adopted and applied the CABO (Council of American Building Officials) One and Two Family Dwelling Code.  From that Code:

*Section R-212 - Landings: Exception: The landing at the exterior of an exterior doorway shall not be more than 8-1/2 inches below the top of the threshold.*

{¶39} Mr. Zimmerman opined: "The subject landing (i.e. the exterior deck itself) clearly violated the Code, since, at a step transition height of approximately 10.75", it was more than 8-1/2 inches below the top of the sliding glass door threshold."  Appellant argues the height violation constitutes negligence per se.

{¶40} As held by the Supreme Court of Ohio in *Chambers v. St. Mary's School,* 82 Ohio St.3d 563, 1998-Ohio-184, syllabus: "The violation of an administrative rule [building code] does not constitute negligence *per se*; however, such a violation may be

admissible as evidence of negligence."  In *Lang v. Holly Hill Motel, Inc.,* 122 Ohio St.3d 120, 2009-Ohio-2495, ¶ 21, the Supreme Court of Ohio stated:

> While a violation of the Building Code may serve as strong evidence that the condition at issue was dangerous and that the landowner breached the attendant duty of care by not rectifying the problem, the violation is mere evidence of negligence and does not raise an irrebuttable presumption of it. As is the case with all other methods of proving negligence, the defendant may challenge the plaintiff's case with applicable defenses, such as the open-and-obvious doctrine.  The plaintiff can avoid such defenses only with a per se finding of negligence, which we declined to extend to this context in *Chambers*.

{¶41}  The *Lang* court at syllabus held: "The open-and-obvious doctrine may be asserted as a defense to a claim of liability arising from a violation of the Ohio Basic Building Code."  *See also, Bauermeister v. Real Pit BBQ, LLC,* 5th Dist. Delaware No. 14 CAE 04 0024, 2014-Ohio-4501.

{¶42}  In addition, we note at the trial court level, appellant only raised a violation of the building code in relation to the Landlord Tenant Act, R.C. 5321.04.  Under R.C. 5432.01(C)(3), the Landlord Tenant Act applies to "residential premises," but not the type of occasional rental in a recreational area as the rental sub judice:

(C) "Residential premises" means a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of tenants generally or the use of which is promised the tenant.  "Residential premises" includes a dwelling unit that is owned or operated by a college or university.  "Residential premises" does not include any of the following:

(3) Tourist homes, hotels, motels, recreational vehicle parks, recreation camps, combined park-camps, temporary park-camps, and other similar facilities where circumstances indicate a transient occupancy.

{¶43}  Upon review, we find the trial court did not err in its decision on negligence per se.

{¶44}  Assignment of Error II is denied.

{¶45} The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. concurs.

Hoffman, J. concurs in part and dissents in part.

SGF/sg 309

*Hoffman, J., concurring in part and dissenting in part*

**{¶46}** I concur in the majority's analysis and disposition of Appellant's second assignment of error.

**{¶47}** I respectfully dissent form the majority's analysis and disposition of Appellant's first assignment of error.

**{¶48}** The majority concludes the hazard was open and obvious under the "step into the darkness" rule.  The majority does note the rule recognizes, in some situations, a person's step into the darkness is reasonable so as not to be barred under the open and obvious doctrine.

**{¶49}** The crucial disputed factual issue presented is whether Appellant exercised reasonable precaution before stepping onto the dark balcony.  The majority concludes Appellant's testimony she did not "foot check" to see if the balcony was level contradicts her later testimony she slowly put her right foot down, feeling for what might be below her, but never felt the floor and gravity took over and she fell.  I readily concur a subsequent contradictory affidavit (or for that matter subsequent contradictory deposition testimony) cannot be used to contradict earlier deposition testimony.  However, upon closer examination of the two statements, I find they are not necessarily contradictory.

**{¶50}** Appellant testified she did not "foot check" to see if the balcony was "**level**" with the bedroom floor from which she was exiting.  However, not foot checking for a level balcony surface is not necessarily inconsistent with, once having determined the balcony surface was not level, slowly putting her right foot down to feel for a step.

**{¶51}** The majority finds Appellant's actions were fluid and continual.  In so doing, I think the majority has usurped the function of the trier-of-fact.  While the trier-of-fact

might conclude Appellant did not "foot check" for the depth of the step-down, it might find Appellant did.  When considering the evidence in a light most favorable to Appellant as required by the rule, I find reasonable minds could differ as to whether Appellant's actions of putting her foot down to feel for what might be below, while holding onto the door, were reasonable precautionary actions so as to constitute an exception to the "step into the darkness" rule.